N. B. RUTHERFORD, Administratrix of the estate of B. F. RUTHERFORD, Deceased, Appellant, v. T. G. SAMPLE, Respondent.

Springfield Court of Appeals, December 12, 1914.

1. PLEADINGS AND JUDGMENT: Judgment In Equity Need not Follow Pleadings Absolutely.  Though the relief granted may be somewhat different from the specific relief sought, it may be given plaintiff if the petition justifies and plaintiff is entitled to same.

2. INSURANCE: Insurable Interest.  A party has no right to take and collect a greater amount of insurance interest on another's property than the value of his own interest.

3. INSURANCE: On Mortgaged Property: Procured by Mortgagee for Mortgagor: Proceeds.  A mortgagee did not insure his own interest but took out insurance for another at the

expense of the mortgagor.  Upon collecting the policy he was duty bound to account to the mortgagor for the proceeds.

4. **MORTGAGES: Credits to be Given: What Included.**  A beneficiary under a deed of trust purchased a special tax bill against the property, paid the taxes and insurance.  The buildings burned and he collected insurance thereon.  He was bound to credit his bid at the foreclosure sale under the deed on the costs of the sale and on payments made by him and if there was any balance it should have been credited on the note.  He should also have credited on the note a sufficient amount of the insurance collected to have paid said note in full and the balance should have been paid to the grantor.

Appeal from Pemiscot County Circuit Court.—*Hon. Frank Kelly,* Judge.

REVERSED AND REMANDED (*with directions*).

*Duncan & McCarty* and *J. R. Brewer* for appellant.

*Jere S. Gossom* for respondent.

ROBERTSON, P. J.—B. F. Rutherford, being the owner of a lot in the city of Caruthersville executed, with his wife, under date of December 19, 1908, to one Sam Jeffress, as trustee, a deed of trust thereon to secure the payment of his note for $500 of even date therewith, to the defendant, due one year after its date, providing for interest at the rate of eight per cent per annum, compounded annually if not so paid. Only one year's interest was paid on this, presumably the interest for the first year.  A sidewalk was built along this property, a special tax bill issued therefor, to D. E. Greene, suit brought thereon, against Rutherford and defendant, judgment obtained, special execution issued, the property advertised and at the sale on July 19, 1911, it was knocked off to W. R. Lacy on his bid of $350 or $375.  The sheriff's deed was not executed until March 7, 1913, more than two months after

the suit at bar was commenced and after the term of office of the then sheriff had expired. The sheriff's deed was made to the defendant. After this sale the defendant had the dwelling house on the lot, then occupied by Rutherford as his home, insured against loss by fire, in defendant's name as owner, for the sum of $1000. The defendant caused the property to be advertised for sale under the deed of trust for January 2, 1912. At about four o'clock on the morning of the day of the sale the house burned; the sale was had, the defendant bid thereat and the property was sold to him for $418 and on February 1, 1912, he received the trustee's deed. Thereafter the defendant collected about $950 from the insurance company for the loss of said building. Rutherford and Lacy testified that it was arranged between them that Rutherford should have the property released for the claim of the special tax bill upon Rutherford paying him the amount of his judgment and costs, all amounting to $181.67. Lacy and Rutherford both testified that the sheriff was directed to make a deed to Rutherford. Rutherford not having the money with which to settle with Lacy arranged with defendant to make the payment, which defendant did, and the sheriff testified that Rutherford directed the deed to be made to the defendant. No part of Lacy's bid was credited on the note. The sheriff testified that he *thought* he took a receipt from Rutherford for the difference between the amount that was due Lacy on his tax bill, including the court costs, and the amount of the bid, but did not produce the receipt at the trial. Defendant insists that he made the arrangement with the holder of the tax bill for the settlement of the claim and was implicated in no way with Rutherford. The insurance agent testified that he solicited Rutherford for insurance on the building but that Rutherford told him that defendant owned the property, "or words to that effect; he said if it was insured, Mr. Semple would have to insure it." De-

fendant testified that when the insurance was adjusted that Rutherford disclaimed any interest in the property, and the insurance agent testified that he did not remember anything of the kind being stated by Rutherford. About two months before the sale under the deed of trust the defendant wrote to Rutherford as follows:

"Mr. Ben Rutherford: Dear Sir. Now I have turned that over to the Bank of Caruthersville. I told you I would give you two months and you told me if I would wait one more month and if you did not sell the place you would turn it over to me. Now you are wanting to wait until the first. It would be the same then. I offered you $200 last summer and now you have fooled around and the place will be sold. I told Dave Huffman to advertise the place if you did not bring up my part. I could have made some money out of the money I paid out to Dennis Greene and others. Ben, you have been treated as well as I could. Let me know. I told Dave that if you wanted 180 dollars and give possession at once, I would take the place, that was the best I would do after waiting and if you did not want to do that to have the place sold let it bring what it would.

"This is the last time I expect to wait. If you had paid up the interest and settled off the sidewalk business I would have waited, but it is all up now.

"T. G. SAMPLE."

The testimony discloses that at the time the deed of trust was given Rutherford had insurance on the house and that a rider was put on the policy to protect defendant. Defendant testified that he went to Rutherford after the execution sale and tried to get him to have the property insured. Rutherford, who was about fifty years of age, and in poor health moved to Kentucky after the house burned and after this suit was brought died, and the suit has been revived in the name of his surviving wife as administratrix of his estate. Before his death his deposition had been

taken and was used at the trial. This action is brought
seeking an accounting and the petition after alleging
the facts prays for general relief. Several witnesses
testified, and were uncontradicted, that the value of the
property in November, 1911, was $1500. The judgment
of the circuit court was for defendant and plaintiff has
appealed.

While it is difficult to ascertain with certainty the
exact theory on which the case was disposed of below
and is presented here (the facts were all developed
without objection), yet as the petition justifies it we
shall dispose of the case according to the equities of
the parties, although the relief granted may be some-
what different from the specific relief sought. [Phil-
lips v. Jackson, 240 Mo. 310, 336, 144 S. W. 112.]

The testimony, under the situation of the parties
as existing when the execution sale was had, leads to
the irresistible conclusion that the defendant, when he
paid Lacy intended it only as a payment to protect his
security as beneficiary under the deed of trust, as is
done by a mortgagee in the payment of general taxes.
His statements in the letter to Rutherford, his declared
effort to have Rutherford secure insurance and his con-
duct in not having the deed made to him until after
this suit was brought conclusively show this. And
why should he cause his property to be advertised and
sold under the deed of trust? Whether the fact that
the sale to Lacy, and his direction to make the deed to
defendant, assuming that he gave such orders, were
sufficient to give validity to such a conveyance, is un-
necessary to decide, as it is evident defendant desired
no such conveyance, except as a weapon to use in this
suit.

The only troublesome question in this case is as to
the insurance money. If the defendant insured his own
interest in the lot without any agreement between him
and Rutherford, then plaintiff is not entitled to any of
the proceeds of the insurance; but if defendant ar-

ranged with Rutherford for the insurance at the charge of Rutherford then plaintiff is entitled to have an account taken of the proceeds. [Dick v. Franklin Fire Insurance Company, 10 Mo. App. 376, 385; Same case, 81 Mo. 103; McDowell v. Morath, 64 Mo. App. 290, 297.] It then became necessary to determine if there was an arrangement between defendant and Rutherford whereby defendant was to procure this insurance at the charge of Rutherford. We hold there was. Rutherford testified that he arranged with defendant for him to procure the insurance in his (Rutherford's) name and charge him with the premium and that defendant afterwards told him it was $9; that he (Rutherford) shortly thereafter learned that the policy was issued to defendant and upon inquiring why this was done defendant said "it would be all right, the most of it was coming to him." This conversation the defendant did not deny. Defendant admits he went to Rutherford to try to get him to insure the property. The testimony of the insurance agent does not aid defendant. The agent, as above quoted, said Rutherford told him that "if it was insured, Mr. Sample would have to insure it." This rather corroborates Rutherford, because he said he did not have the money to pay for the insurance and had arranged with defendant therefor. Another persuasive reason for upholding this theory is that defendant had no right to take and collect a greater amount of insurance than the value of his interest (Dick case, supra, at page 385), which was what Rutherford owed him, and to hold that he did otherwise would be to convict him of a wrong and to permit him to take advantage of it.

The situation, then, at the date of and prior to the sale under the deed of trust, was that Rutherford owed defendant the note, and interest thereon, the amount defendant paid Lacy, the general taxes, if any, paid by defendant on the lot and the amount paid for the insurance, with interest on said sums from date of

payment at the rate of six per cent per annum up until the date of sale. At the date of and after the sale defendant should have credited his bid on the costs of the sale and on the said payments made by him, and if then there was·any balance it should have been credited on the note. After the insurance was collected he should have credited on the note sufficient of the sum realized therefrom to pay the note in full and paid the balance to Rutherford. [Curtis v. Moore, 162 Mo. 442, 454, 63 S. W. 80.] His failure to do this rendered him liable to plaintiff for said balance with interest at six per cent per annum from the date of Rutherford's demand, which defendant did not deny, February, 1912, say March 1, 1912.

The judgment is reversed and the cause remanded with directions to the trial court to take an accounting as above indicated and to enter judgment for plaintiff for whatever sum is found to be due as a result thereof. *Farrington* and *Sturgis, JJ.,* concur.