Jones, P. J.
This is an action brought by defendant in error, The Cincinnati Ice Manufacturing & Cold Storage Company, as plaintiff below, against plaintiff in error, The Hartford Fire In- . surance Company, as defendant below, which parties will be hereinafter referred to, for convenience, as plaintiff and defendant, respectively, to recover upon four policies of insurance for a loss to the buildings and ice manufacturing machinery of the plaintiff, claimed to have been caused by lightning.
There is no question but that the cooling-tower situated upon the roof of the. highest building did fall down during a storm, resulting in serious damage and loss to plaintiff. No part of the property, however, was consumed by fire, nor, so far as the record shows, was combustion started as a result *405 of the lightning. The main contention between the parties is whether the fall of the cooling-tower and the damage occasioned thereby resulted from lightning or was caused by the severe windstorm.
Upon trial to a jury a verdict was rendered in favor of the plaintiff, upon which judgment was entered. It is sought in this proceeding to secure a reversal of that judgment.
The first ground urged for a reversal by plaintiff in. error is that defendant in error was chargeable with fraud and false swearing in the proofs of loss made by it to the insurance company, and that the court refused to give the insurance company’s special charges 9 and 10 which sought to make void the policy because of such false swearing.
The clause of the policy under which this defense is made is as follows:
“This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof; or if the interest of the insured in the property be not truly stated herein; or in case of any fraud or false swearing by the insured touching- any matter relating to this 'insurance or the subject thereof, whether before or after loss.”
Each of the policies sued upon insured plaintiff in stated sums “against all direct loss by fire, except as hereinafter provided,” on certain buildings and structures; also upon certain boilers, engines, ice machines, machinery, shaftings, belting, pulleys, pipes, etc., etc., therein situated, occupied and used in manufacturing ice and in refrigerating their cold-storage rooms.
*406 It is stipulated in a printed form in the body of the policies “that the company shall not be liable" for loss caused directly or' indirectly by invasion,” ■etc..; “or (unless fire ensues, and, in that event for the damage by fire only) by explosion.of any kind, or lightning; but liability for direct damage by lightning may be assumed by specific agreement hereon. If a building or any part thereof fall, except as the result of fire, all insurance by this policy on such building or its contents shall immediately cease.”
By a printed slip, however, attached to the policy and made part of it, designated as “Lightning Clause,” it is provided: “This policy shall cover any direct loss or damage caused by lightning ('meaning thereby the commonly accepted use of the term 'lightning/ and in no case to include loss or damage by cyclone, tornado or windstorm), not exceeding the sum insured, nor th.e interest of the insured in the property, and subject in all other respects to -the terms and .conditions of this policy.”
By these provisions it was undertaken to insure ’ the property against damage by lightning, whether ' or not fire ensued, and any direct loss or damage caused by lightning although not the result of actual combustion. Nowhere in the policy outside of the two above references is loss resulting from lightning mentioned or provided for except by classing it as a fire loss. The proofs of loss submitted by the insured to the company used the word “fire,” as it appears throughout the policy, to describe the loss, and while the insured specifically refers to each policy of insurance against loss *407 or damage by fire according to the terms and conditions printed therein, an'd specifically states that a fire occurred by which the property described in said policy was destroyed or damaged, said fire originating “from stroke of lightning,” and otherwise refers to fire as the cause of damage, there is no direct statement in the affidavits that the building or any part of the property insured was con-' sumed by fire, or -that any combustion ensued, but merely that loss and destruction resulted.
The word “fire” is evidently used as a generic term to cover -all losses protected by the policy and 'can not be construed to refer to losses by combus^ tion alone. The record contains much interesting testimony given by 'expert scientists as to the nature and manifestations of lightning and electrical discharges from the clouds during thunder storms, but it is apparent that exact rules can not be adduced from the phenomena collated as to what results follow when a building is “struck by lightning.” Lightning is always accompanied by some flash of light caused by incandescence or burning of gas, so to that extent fire is a usual manifestation. The damage caused by lightning, however, by a shock knocking down a tree or building, is not necessarily followed by or the result of combustion, yet it would be a direct loss or damage caused by lightning within the terms of the “Lightning Clause” in these policies, and the contrast between the terms of the lightning clause and the provision in .the body of -the policy above referred to which exempts such damage unless fine ensues is a recognition of this difference. While that may not be material, it is shown by the record that the proofs *408 of loss used in this instance were prepared on blank forms printed for the use of the insured in such .cases of loss, and conform to the language of printed policies used for fire losses which by the addition of the printed lightning clause stipulation have been adapted also to insure against lightning.
There is no question but that the. ordinary fire policy such as was used in this case would cover damage from water, or from smoke, or from the collapse of a building which was the result of fire, although actual combustion may not have entered into the particular loss itself, • and undoubtedly these policies, as enlarged by the addition of the lightning clause, cover damage by lightning where combustion is riot an element.
Placing this construction therefore upon the policy and proof of loss, and considering the testimony of Mr. Schell and Mr. Lippincott, called on behalf of the insurance company, and of the officer and employe of the insured, we can not find that there was any evidence of fraud or false swearing introduced which would require or justify the giving of special charges 9 and 10 — as they must be given or refused in the exact language in which they were presented — and the court therefore was not in error in refusing them. Undoubtedly a provision in a policy avoiding liability under it for fraud or false swearing occurring in the proofs of loss is upheld and constitutes a complete bar to any recovery under the policy (Capital Fire Ins. Co. v. Beverly, 14 C. C., 468), but it is a general rule that misstatements in a proof of loss, to forfeit the policy, must be not only false, but unlawfully false. A mere innocent mistake will not amount to fraud *409 or false swearing within the provisions of the policy. (4 Cooley Briefs on the Law of Insurance, 3415.) We also find that the part of the general charge as given by the court in relation to this claim of false swearing was a proper charge and all that the defendant was reasonably entitled to.
The plaintiff in error next urges as a ground of error that the verdict and judgment are excessive, and that the charge of the court in fixing the amount of recovery is erroneous because the prorating clause in the policies in suit was disregarded, and because the other concurrent insurers were necessary parties to the action. It is particularly urged that even though the valued-policy rule provided by Sections 9583 and 9584, General Code, might be applied to the first paragraph of the description of the property improved, limited particularly to the buildings, it could not apply to the property constituting the cooling-tower and ice-mabing machinery, as detailed and described in the second clause of the property insured, for the reason that the latter must be deemed personal property or chattels, as distinguished from real estate.
A very lengthy and impressive discussion is furnished by counsel for plaintiff in error in numerous briefs to support this contention, but the correctness of their position defends upon a conclusion that the judgment of the supreme court in the case of The National Fire Ins. Co. v. Dennison; 93 Ohio St., 404, is not sound law and does not properly construe Sections 9583 and 9584. In our opinion the decision in that case is correct; but if counsel are right in this contention they must ad *410 dress their argument to the supreme court rather than to the court of appeals, as this court is conclusively bound by the decision of the supreme court and it is useless for counsel to undertake to have us disregard or refuse to follow it.
The case of Insurance Co. v. Luce, 11 C. C., 476, holds that property situated and used as is the ice-machine property in this case constitutes fixtures, and, whether technically a part of the real estate itself or not, the items enumerated in the second paragraph of the description of property in the policies all constitute “structures” within the terms of Section 9583. The testimony of Mr. Siegel giving the details of the items included in this property and the damage thereto, none of which testimony was challenged or disputed, shows that the building, fixtures and machinery were used as an entirety and came within the .terms of the valued-policy act and the - authorities above mentioned both as to the prorating and as to the amount of the damages. The court therefore did not err in refusing to give special instruction No. 11, or in its general charge instructing the jury that these items properly were “structures” within the contemplation of the law of the state of Ohio-.
It is also urged that the trial court erred in excluding photographs representing damage by wind to. other buildings in Cincinnati which were claimed to have been in the path of the storm in which plaintiff’s buildings were damaged.
The admission of such evidence was largely in the discretion of the -trial court. It appears that the two photographs offered represented collapsed buildings which were located many squares away *411 from the property involved in this case, and the record fails to show definitely and conclusively that they were in the path of the particular windstorm which defendant contends caused plaintiff’s damage. We can not say that the court erred in refusing to admit this evidence.
Nor do we find that the court erred in allowing questions to be asked of Mr. Lippincott, the insurance adjuster, as to the extent of plaintiff’s loss, especially so as the witness failed to directly answer the question excepted to, in such a way as to fix any definite sum.
There is no question but that under Weil v. Connecticut Fire Ins. Co., 23 C. C., N. S., 281, and other cases cited, the insurance company was entitled, upon its disagreement with the insured as to the extent of the loss, to have an appraisement by virtue of the terms of the insurance policy; but when the insured named its appraiser and requested the insurance company to also name an appraiser, in accordance with the provisions of the policy, the insurance company could not refuse to do so merely because work had been done by the insured in the way of restoration of the property damaged.
As a part of its general charge, the court said:
“The first question you will determine when you retire for deliberation will be, what caused the loss and damage? If you find from all the evidence, facts and circumstances of this case that the loss and damage was caused by a stroke of lightning, then your verdict should be for the plaintiff.”
*412 While it is true that this clause- taken alone would be erroneous, though positive in its form, it must be taken in connection with all the remaining parts of the general charge which set out and discuss the different defenses of the insurance company'and cover the entire case. We can not therefore say, considering the charge as a whole, that the use of the language quoted, taken with the remainder of the charge, served to mislead the jury, or was so prejudicial to the defendant as to require a reversal.
The main contention, however, is that the verdict was contrary to the manifest weight of the 'evidence.
The record discloses very interesting testimony in regard to the cause of the injury and the character of the storm. It is argued on behalf of the insurance company that the evidence conclusively shows that the collapse of the cooling-tower, and the consequent damage to the building, was caused by wind, and to support their contention they have produced the testimony of the United States Weather Reports, and the observer, as to the local record of the direction and velocity of the wind, amount of rain and general characteristics of the unusual storm which visited the locality at the time of the damage. They also argue that lightning would necessarily have shown some fusing or burning of the metals or wood, showing the track taken by the electric current, and that the lightning would have followed water pipes which extended higher and outside of the brick wall. On behalf of the plaintiff it is with equal force contended that the evidence submitted conclusively *413 shows -that the time of the actual collapse of the-cooling-tower, and the consequent damage, coincided exactly with a stroke of lightning and severe thunder clap which was testified to by numerous railroad men and others who were in the immediate vicinity, and that it preceded by some distinct period of time the strong wind which followed. It is insisted that this was absolutely shown by -the fact that the dense ammonia fumes were blown from the collapsed building south and southeast under the Eighth street viaduct, and as far as Pearl street down Eggleston avenue upon which the railroad tracks were located and on which tracks and the adjoining switch tracks a number of ’witnesses were then engaged in shifting cars. It is ‘also insisted on behalf of plaintiff that the brine pipe offered the best -conductor for the electricity, so near the top -of the building that it would be preferred by the electric current to either the water pipe or the brick walls, and that the lightning might well have demolished enough of the brick wall to reach this brine pipe and follow it down to the earth, without showing other evidence than the broken wall at the top. which caused and was obliterated by the falling of the cooling-tower.
While of course in the very nature of things a difficult question is raised as to just what caused an accident such as -this, the issue is one which it is peculiarly the province of the jury to decide. A-careful -consideration of all of the minute and interesting -evidence and careful arguments of counsel submitted in this case fails to convince the court that the verdict of -the jury can be held con *414 trary to the manifest weight of the evidence; nor do we find in the'numerous points suggested any prejudicial error which would require a reversal of the' judgment, which therefore must be affirmed.

Judgment affirmed.

'Hamilton, J., concurs.