[No. 19477.  Department One.  December 9, 1925.]

WASHINGTON FIRE RELIEF ASSOCIATION, *Appellant*, v.
JAMES H. ALBRO *et al.*, *Respondents.*[1]

[1] INSURANCE (109)—ESTOPPEL AND WAIVER—KNOWLEDGE OF AS NO-
TICE TO OFFICERS.  A policy of fire insurance is not invalidated
by the fact that the company and its agents had no knowledge
of other insurance on the property, where nothing was concealed
from them, the policy did not prohibit the taking of other in-
surance, and fault in the omission was the agent's and not the
insured's.

[2] EVIDENCE (20-1)—PRESUMPTIONS—FAILURE TO TESTIFY OR CALL
WITNESS.  No unfavorable inference is to be drawn against a
party for not calling his daughter to corroborate him as to a
disputed conversation, where her age is not shown, she was in
an adjoining room, and the possibility of her overhearing or
comprehending the transaction is remote.

[3] INSURANCE (187)—ACTIONS ON POLICY—EVIDENCE—SUFFICIENCY—
VALUE OF PROPERTY.  Findings that the value of a barn and its
contents exceeded the amount of a policy of fire insurance,
$1,600, are sustained by evidence as to the condition of the barn
and the testimony of witnesses that the value of the property
destroyed was between $1,600 and $2,000.

[4] SAME (159)—ACTIONS ON POLICY—DEFENSES—NEGLIGENCE OF IN-
SURED.  Inability to account for a fire, which destroyed a barn
shortly after the insured left it, furnishes no warrant for a
claim that it was the result of negligence or design.

[5] SAME (24-1)—INSURABLE INTEREST—WHAT CONSTITUTES—INTER-
EST OF HUSBAND IN PART OF PROPERTY.  A policy of fire insurance,
taken out by the husband upon a barn and its contents, is not
avoided by the fact that the land was the separate property of
his wife, where the two were living on the land as a home, and
consulted together about taking out the insurance; since the
husband had an insurable interest which he could insure in his
own name for their joint benefit.

[6] SAME (22-1, 27)—INSURABLE INTEREST—AGENCY FOR APPLICANT.
A policy of fire insurance taken out by a husband upon a barn
which was the separate property of the wife and upon its con-
tents, which was the result of their joint labor, may be sustained
on the principle of agency, where he had express or implied au-
thority from her to insure the property.

[1]Reported in 241 Pac. 356.

Appeal from a judgment of the superior court for Lewis county, Reynolds, J., entered February 2, 1925, upon findings in favor of the defendant in an action to recover money paid, after a trial on the merits to the court.   Affirmed.

*Forney & Ponder,* for appellant.

*W. E. Bishop* and *C. D. Cunningham,* for respondents.

FULLERTON, J.—On August 14, 1923, the appellant, a mutual fire insurance association, issued a policy of fire insurance to the respondent, James H. Albro, insuring a barn and its contents, with certain other property, against loss by fire.   The barn and its contents were destroyed by fire on the day preceding the date of the issuance of the policy; the association nevertheless adjusted the loss and paid to Albro in settlement thereof the sum of $970.   Subsequently, the association conceived that the policy had been procured by fraudulent representations and fraudulent concealment of the fact that there was other insurance on the property, and brought the present action to recover the sum paid. There was a former trial of the cause in the court below, the judgment entered in which was reversed on appeal to this court because of erroneous exclusion of testimony.   *Washington Fire Relief Association v. Albro,* 130 Wash. 114, 226 Pac. 264.   On the remand of the cause, it was again tried, resulting in a judgment denying recovery.   The present appeal is from the last mentioned judgment.

That there was in fact other insurance on a part of the property destroyed by the fire, namely, the barn, the evidence conclusively shows. The barn was situated upon farm property, a tract of land consisting of some fifty-five acres.   Sometime prior to the issuance of the

insurance here in question, the respondents borrowed the sum of two thousand dollars, executing a mortgage upon the land as security for the loan. The mortgage provided that the borrowers should keep the buildings on the land insured in a named sum for the benefit of the mortgagee, and insurance was procured on the barn from an old line insurance company in the sum of one thousand dollars in the name of the mortgagee. This insurance was in force at the time of the loss and was paid in full by the insurance company to the mortgagee shortly after that time.

On the question whether the appellant insurance company had notice of the prior insurance at the time it issued its policy and at the time it paid the loss, the evidence is in conflict. The application for the insurance was made by the respondent, James H. Albro. The agent of the insurance company testified that, at the time the application was made, he asked the respondent the direct question whether there was any other insurance on the property, and that the question was answered in the negative without qualification or explanation of any sort, and that he so recorded the answer in the written application for the insurance which the respondent signed. The respondent testified that the question asked him was whether he, the applicant, had other insurance on the property, and that he answered this question in the negative, but that he at the same time informed the agent of the fact that he with his wife had borrowed money on the land, and had insured the buildings thereon in favor of the mortgagee as security for the loan. It does not appear that he was asked, or that he informed the agent, as to the amount of the loan or as to the amount of the insurance on the buildings, but it equally appears that he was not questioned as to these matters.

It was testified by one of the appellant's adjusters that, at the time the fire loss was adjusted, he asked the respondent James H. Albro whether there was any other insurance on the barn, and was answered to the effect that there was not. The respondent denies this statement, saying that no questions were asked him at that time concerning other insurance. The appellant's learned counsel in their arguments contend that the testimony of the respondent James H. Albro is equivocal and artful, and argue that his own testimony shows him to be unworthy of belief. But an examination of his testimony does not convince us that the criticism is just. He is directly supported by his corespondent; and some of the circumstances surrounding the transaction in our opinion lend credence to his testimony. The appellant, as we have before stated, is a mutual fire insurance company. It insures the property of those persons only who belong to an order called in the record "The Grange." After the respondents moved onto the land on which the insured building was situated, they were solicited to join the order mentioned, and were informed of its advantages, one of which was that they could procure insurance on their property without excessive cost. After they had joined the order, the agent of the insurance company was sent to them to take their application. In listing the property for insurance, only the barn, its contents, consisting of hay and harness, and certain personal property —"piano and a graphophone"—in the dwelling house on the premises, were listed. Since there were a dwelling house and some outbuildings on the premises in addition to the barn, it would seem that the omission to list the other property would have excited sufficient curiosity to provoke inquiry. This, at least, is not an unnatural inference, and to us it lends credence to the

thought that the agent had some knowledge of the situation.

[1]   It is possible, and we think it highly probable, that neither the agent who took the application nor the officers of the company who approved it had knowledge of the exact situation, but this would not avoid the policy.   It was the appellant's obligation to know the facts, and if nothing was concealed from it, it cannot now be heard to complain that the situation was not what it supposed it to be.   *Workman v. Royal Exchange Assurance*, 96 Wash. 559, 165 Pac. 488.

The fact whether a false representation was made at the time of the adjustment of the loss stands upon the testimony of one of the adjusters that it was made and the denial of the respondent, James H. Albro. It is of some significance, however, that the other adjuster present made no inquiry himself, and heard none made by his co-adjuster.   It may be added here that the policies of the company do not prohibit the taking of insurance on property insured in another company. The requirements in this respect were not, it is true, strictly complied with in this instance, but the fault causing the omission was that of the appellant's agent rather than that of the respondents, and for this reason it cannot be urged to avoid the policy.

[2]   In this connection it is argued that an unfavorable inference as to the truth of the respondents' testimony should be drawn from the fact they did not call as a witness a daughter of one of the respondents who was present in the dwelling house at the time the application for the insurance was taken.   But, assuming that the rule is as the contention assumes it to be, we cannot think the fact here shown justifies an application of the rule.   The age of the daughter is not shown, nor was it shown that she was at any time in the room where the transaction was conducted. The facts actually

appearing from which it is thought she overheard the transaction are, that the rooms of the house were small, that the daughter was in an adjoining room, and that the door between the rooms was at all times open. But it further appeared that some new sheet music had been brought into the house on that day and that the daughter was at the time of the transaction trying out the music on the piano. Although she was "playing softly," it would seem that the possibility of her hearing and comprehending the transaction was too remote to base an inference that her testimony, if she had been called, would be unfavorable to the respondents. But the rule itself, even under the most favorable circumstances, has not much behind it either of force or substance. It is always within the right of the complaining party to call the witness who he has reason to suspect has knowledge of facts favorable to him, and, when he fails to do so, unless prevented by the act of the other side, the presumption in his favor arising from the fact that the other side did not call the witness can and should have but little weight. Our conclusion on this branch of the case, therefore, is, that the weight of the evidence does not preponderate against the conclusion of the trial court to the effect that there was no fraud or concealment which induced the contract of insurance.

[3]    The existing insurance on the barn at the time of the fire aggregated sixteen hundred dollars. The appellant contends that this sum is grossly in excess of its value. The evidence of value was conflicting. On the part of the appellant, it was shown that the barn was old, having stood for more than a quarter of a century. Certain of its witnesses who had never seen the structure and who testified as experts in answer to hypothetical questions, stated that it could have but little more than a nominal value. Others again, who had seen it, placed values upon it much less than the

amount of the insurance. On the other side, it was shown that the building was of cedar construction, the life of which was much longer than that of the usual building materials; that it showed no evidence of rot and was substantial and storm proof; that it had in it a tin lined granary capable of holding 125 bushels of grain, a work bench, and a place in which could be stored farm machinery and other farming utensils; that it was fitted with stanchions for some six cows and with stalls for three horses; that these stalls were laid with a substantial floor, back of which was a concrete drain, constructed for the more convenient removal of waste, and witnesses for the respondents, familiar with its construction, estimated its value when destroyed as being between $1,600 and $2,000.

It is the policy, of course, of all standard insurance companies, and it is in accord with sound public policy, to require the owner of property to carry a part of his insurance; that is to say, it is not the policy to insure to the full value of the thing insured. The reason is obvious. If the owner must suffer a loss because of the destruction of his property by fire, he is more apt to exercise care for the prevention of fire than he will be if another must bear it, and there is less inducement for the criminally inclined to resort to incendiarism. There was here no great margin between the amount of the insurance and the value of the property insured, even if we accept as true the testimony most favorable to the respondents, and none at all if we accept the minimum valuations of their witnesses or the valuations of the witnesses for the appellant, but on this question we are inclined to follow the conclusions of the trial court. It seems to us that the more credible testimony is that the value of the property exceeded the amount of the insurance, and that the insured suffered a loss in excess of the sums paid on account thereof.

[4]    Nor is there anything in the record tending to show as the appellant somewhat urgently insinuates, that the fire was the result of negligence, carelessness, or possible design on the part of the respondents. Its origin, it is true, is not accounted for, and it is true that it occurred shortly after the respondents left the place, leaving no one in charge. But it was shown that the respondents performed nothing more than the usual and customary chores about the premises before leaving, and that they left for a legitimate purpose, namely, to attend a neighborhood picnic. We can discover nothing in the record that tends to show that the fire originated from anything other than an unknown fortuitous circumstance, the protection against which is the very purpose for which insurance is obtained.

[5]    In its complaint the appellant alleged that the insured property was the community property of the respondents, and that James H. Albro procured the insurance in his own name for and on behalf of the community. These allegations were admitted in the answer of the respondents. On the trial of the cause, it developed from the testimony of the respondent Johanna Albro that the real property on which the barn was situated was property acquired by her prior to her marriage with James H. Albro. After this fact developed, the appellant asked leave to amend its complaint and leave to introduce further evidence of the fact that the property destroyed was the separate property of the respondent Johanna Albro, and that the other respondent in whose name the insurance was taken had no insurable interest therein. But we think that the action of the court does not require a further hearing for the purpose of taking evidence, even were we to concede that the court abused its discretion in disallowing the amendment. The fact that the property

was the separate property of Johanna Albro now suffi-
ciently appears in the record, and since the cause is
triable in this court *de novo*, we may consider the fact
as established.

But it by no means follows that there must be for
this reason a reversal of the judgment of the trial
court. It was shown by undisputed evidence, and by
evidence that could hardly be successfully disputed,
that the respondents were living upon the land as a
home; that they were farming it as a means of obtain-
ing a livelihood; and that the maintenance of a barn on
the premises was essential to that purpose. It was
shown, furthermore, that prior to the time the insur-
ance was applied for, the respondents consulted to-
gether as to the advisability of taking out further in-
surance, and as to the property to be covered thereby,
and even while the application was being prepared a
consultation was had between them whether certain
personal property not theretofore considered should be
included therein. It is a rule of law, founded on sound
public policy, that one person cannot insure for his
own benefit the property of another in which he has
no interest. But the husband in this instance was not
without interest. The contents of the barn, at least
the hay therein, was the product of the joint labor of
both the husband and wife, and was their community
property. In this plainly the husband had an interest
and could lawfully insure it in his own name for their
joint benefit. So also, we think, he had an insurable
interest in the barn, notwithstanding it may have been
legally the separate property of his wife. As is shown
by the cases collected in 20 C. J. 20, under § 3, the term
"interest," as used in the phrase "insurable interest,"
is not limited to property or ownership in the subject
matter of the insurance; that where the interest of
the insured in, or his relation to, the property is such

that he will be benefited by its continued existence, or will suffer a direct pecuniary loss by its destruction, his contract of insurance will be upheld, although he has no legal or equitable title. As we have shown, the husband in this instance had a direct pecuniary interest in the maintenance of the barn on the premises, and under the rule it must follow that he had an insurable interest therein. A somewhat analogous case is *Pearman v. Farmers' Mut. Fire Ins. Co.*, 214 S. W. (Mo. App.) 292. The facts involved and the holding of the court thereon sufficiently appear from the following excerpt from the opinion:

"The first question to be determined is whether plaintiff had an insurable interest in the property. We think he had. Plaintiff's father-in-law, in an attempt to make a will, directed that the title to the farm (on which the insured barn stood) should remain in the name of his estate for six years, during which time plaintiff and his wife were to pay $100 a year rent on it, also taxes and insurance, and farm the land in good shape by rotation of crops, manuring, preventing washes, and keeping up fencing and repairs; and upon this being faithfully done, a deed was to be made to plaintiff's wife and the heirs of her body. After the father's death the heirs entered into an agreement with plaintiff and his wife whereby the terms of the attempted will were ratified and agreed to be carried out. It was while plaintiff and his wife were in possession under said will and agreement, and during the continuance of the six years, that the insurance involved herein was taken out. Under these circumstances, plaintiff had an insurable interest in the property. 2 Joyce on Insurance, §§ 887, 888, 961."

[6] Again, we think the contract of insurance can be upheld on the principle of agency. There was here an implied, if not a direct, authorization by the wife to the husband to effect the insurance, and she would not be heard to assert want of authority on the part

of the husband to avoid personal liability on the obligation incurred in so doing. By the converse of the proposition, she is equally entitled to the benefits arising therefrom. Stating the principle involved in another way, the insurance was effected by the husband acting on his own behalf in so far as their joint interests were involved, and as the agent of the wife in so far as the transaction affected her separate interests. There is no evidence of fraudulent intent in this respect, and it must follow that there was a valid contract of insurance.

The trial court did not err in refusing to allow a recovery of the payment made on account of the loss. The judgment will stand affirmed.

TOLMAN, C. J., HOLCOMB, and ASKREN, JJ., concur.
MACKINTOSH, J., dissents.