THERESA GRASSO, APPELLEE, v. GLENS FALLS INSURANCE COMPANY, APPELLANT.

274 N. W. 569

FILED JULY 16, 1937. No. 30013.

*Morgan, Sutton & Fromkin,* for appellant.

*Paul J. Garrotto* and *Samuel P. Caniglia, contra.*

Heard before GOSS, C. J., GOOD, EBERLY, DAY, PAINE and CARTER, JJ., and LIGHTNER, District Judge.

EBERLY, J.

This is an action at law prosecuted by the appellee (plaintiff below) against the appellant (defendant below), based upon the provisions of an insurance contract indemnifying against loss arising by reason of damages occasioned by lightning. A trial to a jury resulted in a verdict and judgment for plaintiff in the sum of $400. From the order of the trial court overruling its motion for a new trial, the defendant insurance company appeals.

The issuance of the policy by the defendant, the payment of the premium by the assured, and the identity of the property damaged are not controverted.

Certain questions of procedure are presented by appellant in its brief, but they are not deemed of importance in view of the record considered as an entirety.

The controlling question is whether the damages relied upon by plaintiff were occasioned by the direct effect of lightning, within the coverage stipulated by the terms of the policy. The defendant insists that the proof in the record is inadequate to establish that the damages sued for were the result of a stroke of lightning. On the 27th day of June, 1935, prior to an electrical and rain-storm, which occurred on that day, the property insured was in good condition, and had suffered none of the damages for which recovery is sought. This property is described in the policy as a "one story * * * frame building, including foundations, plumbing, electric wiring and stationary heating, lighting, * * * apparatus, * * * also all permanent fixtures * * * belonging to and constituting a part of said building," etc., occupied by assured and situated on the premises described in the policy. There were two boilers situated in the basement that supplied heat to radiators situated within the building, and radiators situated in a greenhouse constituting a part of the property insured. These boilers communicated with a chimney built within the foundation walls of this building at the northwest corner thereof, and such chimney was approximately 45 feet in height. A six-inch steel sewer pipe carried the sewage of the building through the north wall and continued some ten or twelve feet, where it joined and emptied into a "clay" pipe of equal size which carried its contents to the city sewer located in the street adjacent thereto.

An employee of plaintiff testifies that he was sleeping in the building insured on the night of June 26-27, 1935. About 1:30 a. m. he awoke, arose, and went out into the greenhouse and closed its ventilators or shutters for the protection of the growing plants. He then returned to his bed. He testifies that about 2:30 a. m. he heard a terrific crash; there was a flash of lightning; the whole house was shaking. He was jerked out of bed. As he was getting up

from the floor there was a flash of fire. He got his flash light and went down to the basement. He tried to turn on the electric lights, but they would not work. By aid of his flash light he saw the "north wall of the basement" was on top of the boilers and the water was shooting out of the broken sewer pipe. He had been sleeping on a steel bed which was situated "right close to a radiator." It appears that pipes leading from the boilers to the chimney, and from the boilers to the radiators, as well as the sewer pipe connecting the building with the city sewer, were badly broken or snapped off. He also testifies that when he first went down to the basement the north wall had been knocked down and water was coming into the basement through the broken sewer pipe, and in about 25 minutes the water came up to the top of the boilers. The lower part of this wall had been constructed of concrete, reinforced by steel or iron rods. Next above the reinforced concrete were a series of about eight or nine rows of eight-inch concrete blocks. The upper three rows were still in place. The result of the force applied had created a "half moon" opening into the basement through the lower part of the north wall about eight or ten feet deep and of almost the same width. The cement blocks that were thrown into the cellar were all in splinters.

It is obvious that, if plaintiff's witnesses are to be believed, a bolt of lightning was the cause of the situation disclosed by the evidence, and plaintiff would be entitled to recover under the terms of her policy. If we accord to plaintiff's experts due credit, the fact remains that the record presents two questions of fact for the determination of a jury, viz.: (1) Was the property damaged by lightning? and (2) what is the amount to which plaintiff is entitled? Both questions were properly submitted to the trial jury, and the verdict returned finds ample support in the evidence.

It follows, therefore, that the judgment of the district court is correct, and it is

AFFIRMED.