54 So.2d 764

## NORTH BRITISH & MERCANTILE INS. CO., Limited, v. SCIANDRA.

### 6 Div. 49.

Supreme Court of Alabama.

Oct. 4, 1951.

Rehearing Denied Nov. 23, 1951.

F. W. Davies and Davies & Williams, all of Birmingham, for appellant.

Maurice F. Bishop and M. L. Gwaltney, Birmingham, for appellee.

412

property, which loss he alleges was caused by lightning or windstorm, risks covered by a policy of insurance that had been issued by defendant.

Defendant denied that plaintiff suffered any loss for causes covered by the policy of insurance. It is defendant's insistence that the loss suffered by plaintiff was due to the fact that the building was not properly constructed and that an accumulation of water on the roof caused it to collapse.

The trial resulted in a verdict and judgment for plaintiff in the amount of $3,350. Defendant's motion for a new trial being overruled, it has appealed to this court.

There are seventy-three assignments of error. Some of them are not even referred to in brief. They will not be considered. Hillard v. City of Mobile, 253 Ala. 676, 47 So.2d 162; Hall v. Esslinger, 235 Ala. 451, 179 So. 639. Other assignments of error, while mentioned in brief, are not argued sufficiently to warrant treatment here. In many instances no authorities are cited. Cairnes v. Hillman Drug Co., 214 Ala. 545, 108 So. 362; Republic Iron & Steel Co. v. Quinton, 194 Ala. 126, 69 So. 604; Georgia Cotton Co. v. Lee, 196 Ala. 599, 72 So. 158; Hodge v. Rambow, 155 Ala. 175, 45 So. 678.

Defendant requested the general affirmative charge with hypothesis as to both counts of the complaint. Plaintiff's loss was alleged to have been caused by lightning in Count A and by windstorm in Count B. The refusal of the trial court to give numerous charges in the nature of affirmative charges is the basis of many of the assignments of error.

The manner in which the facts are stated in brief of counsel for defendant below, appellant here, causes us to believe that we should again refer to the rule so often stated that where, as here, the defendant insists it was entitled to the affirmative charge, we review the tendencies of the evidence in the light most favorable to the plaintiff, and this without regard to the view which we may have as to its weight, and allow such reasonable inferences as the jury was free to draw, not those which we think to have been the more probable. Cor-

LAWSON, Justice.

Frank Sciandra brought this action in the circuit court of Jefferson County against the North British & Mercantile Insurance Company, Ltd., a corporation. The purpose of the action is to recover for loss alleged to have been suffered by plaintiff to

nelison v. Logan, 253 Ala. 618, 46 So.2d 215, and cases cited.

In July, 1946, a vacant lot at 1106 Third Avenue, West, Birmingham, was conveyed to plaintiff and his wife by deed. The wife's money, as well as plaintiff's money, was used in paying the purchase price. After the lot was purchased plaintiff entered into a contract for the construction of a building on the lot. Thereafter the building was constructed on the lot, the entire cost of which was paid by plaintiff.

On April 27, 1948, the defendant, through its agent Hughes, issued the insurance policy on which this suit was brought. Hughes had witnessed and notarized the original construction contract.

Plaintiff moved into the building on or about September 14, 1947, and continued to occupy the building as a delicatessen and store until July 16, 1948, on which day a part of the roof over the store collapsed. Plaintiff, his wife and their son all were active in the business carried on in the building.

What caused the roof of the building to collapse is the question at issue. There is evidence for the plaintiff which tends to show that the roof collapsed at approximately 4:30 p. m. on the afternoon of July 16, 1948. It is without dispute in the evidence that the weather had been bad all day. There had been rain, wind, and considerable electrical disturbances.

■ There was evidence to support the defendant's theory that the collapse of the roof was due to an accumulation of water on top of an improperly constructed building. But on this question the evidence was in sharp conflict. The jury found against the defendant on this issue. It was for the jury to determine which witnesses to believe.

■ We come to the question of whether or not the record contains sufficient evidence, when viewed in the light most favorable to the plaintiff, to present a jury question as to whether the damage to the building was caused by lightning.

The evidence going to show that there was an electrical disturbance of consider-able magnitude in the vicinity of the insured property, standing alone, would not in our opinion support such a finding. But the evidence shows that plaintiff's son was in the building at the time the roof collapsed. He testified in substance that just before the roof collapsed there were repeated "peals of thunder" that he saw a "streak of lightning" come through the front of the building; that immediately the ceiling began to fall; that it sounded as if "somebody" was breaking timber.

After the roof collapsed, some of the timbers appeared to have been splintered, but there were no marks found on the timbers indicating burns.

In support of its argument that it was entitled to the affirmative charge as to Count A which, as before shown, averred that plaintiff's loss was occasioned by lightning, defendant below, appellant here, in its original brief cited no case dealing with the exact question. In reply brief, the case of Clark v. Franklin. Farmers' Mutual Fire Ins. Co., 111 Wis. 65, 86 N.W. 549, 551, was relied upon. In that case the Wisconsin court, in holding that the evidence was insufficient to support a finding that the loss was occasioned by lightning, referred to the fact that there were no marks of fire anywhere "such as are customarily found where lightning has come in contact with dry wood."

The facts in the case of Clark v. Franklin Farmers' Mutual Fire Ins. Co., supra, are easily distinguishable from those in the instant case. But counsel for appellant places much emphasis on the observation made by the Wisconsin court that there were no marks of fire. There are other cases wherein the absence of such evidence has not been considered in any wise controlling of the question of whether or not the loss was occasioned by lightning.

Counsel for plaintiff below, appellee here, has called our attention to a number of cases from other jurisdictions bearing on the question. We have found that there is an extensive annotation on the subject in 15 American Law Reports 2d, beginning at page 1017, wherein many cases are summarized, including some of those cited by appellee.

It would but encumber the opinion to set out here an analysis of the cases. Suffice it to say that we are clear to the conclusion that a jury question was presented as to whether the roof of the insured building was caused to collapse by lightning. We think this conclusion is fully supported by the cases hereafter cited from other jurisdictions. Phoenix Assurance Co. v. Loetscher, 215 Ark. 23, 219 S.W.2d 629; Caledonian Ins. Co. v. Naifeh, 229 Ky. 293, 16 S.W.2d 1046; Grasso v. Glen Falls Ins. Co., 133 Neb. 221, 274 N.W. 569; Hartford Fire Ins. Co. v. Cincinnati Ice Mfg. & Cold Storage Co., 9 Ohio App. 403; Shields v. Vermont Mut. Fire Ins. Co., 102 Vt. 224, 147 A. 352; Clouse v. St. Paul Fire & Marine Ins. Co., 152 Neb. 230, 40 N.W.2d 820, 15 A.L.R.2d 1008; Beakes v. Commercial Union Assur. Co., Ltd., 65 Hun. 621, 20 N.Y.S. 37; Warmcastle v. Scottish Union & National Ins. Co., 210 Pa. 362, 59 A. 1105. None of these cases is in all respects factually in point with the instant case. However, they do hold that under similar factual situations, jury questions were presented.

The next question for consideration is whether the evidence, when viewed in the light most favorable to plaintiff, is sufficient to make a jury question as to whether the damage to the building was caused by windstorm.

As before indicated, the evidence for the plaintiff tended to show that the roof collapsed "around 4:30, something like that." The records of the weather bureau in Birmingham showed that at 4:18 p. m. the wind was blowing at a rate of thirty-one miles per hour and continued to blow at that rate for five minutes and then gradually decreased. The superintendent of a ball park located a short distance from the insured building testified that "the wind tore off about five squares of the park roof." Plaintiff's son testified in effect that the wind was blowing at a rapid rate at the time the roof collapsed.

In original brief filed on behalf of appellant, two cases from other jurisdictions were cited in support of the contention that defendant was entitled to the affirmative charge as to Count B, the windstorm count.

One of them, Sabatier Bros. v. Scottish Union & National Ins. Co. of Louisiana, La. App., 152 So. 85, is so clearly distinguishable from the instant case on the facts as not to require consideration here. The other case is that of Clark v. Fidelity & Guaranty Fire Corp., City Ct., 39 N.Y.S.2d 377, 380, by the City Court of Buffalo. As here pertinent, that case holds: "While a twenty-eight M.P.H. wind may be no aerial lullaby, yet, in this court's opinion, it falls far short of qualifying under any or all of the above definitions as a 'Windstorm'".

In so far as our research discloses, the case of Clark v. Fidelity & Guaranty Fire Corp., supra, has been cited but twice. In Metropolitan Ice Cream Co. v. Union Mut. Fire Ins. Co., Mo.App., 210 S.W.2d 700, while that case is cited, it was not followed in so far as it may be said to hold that as a matter of law a wind with a velocity of 28 m.p.h. cannot be said to be a windstorm. In the Metropolitan case, supra, the Missouri court held that a jury question was presented as to whether or not a windstorm caused the damage to plaintiff's property, although the records of the weather bureau showed a maximum wind velocity of 23 m.p.h.

In Friedman v. Employers' Fire Ins. Co., 336 Ill.App. 140, 83 N.E.2d 40, the case of Clark v. Fidelity & Guaranty Fire Corp., supra, was merely cited for the conclusion reached that the evidence did not fairly tend to establish that there was a windstorm or a wind sufficiently strong to cause the damage to the insured property. But a reading of that case will show that the court did not cite the case of Clark v. Fidelity & Guaranty Fire Corp. for the proposition that a wind of 28 m.p.h. is not a windstorm.

We are not willing to say that the jury would not have been justified in finding that there was a windstorm at the time the insured property was damaged merely because the velocity of the wind did not exceed 31 m.p.h. We think the question as to whether or not there was a windstorm was one for the jury. Metropolitan Ice Cream Co. v. Union Mut. Fire Ins. Co., supra; Bogalusa Gin & Warehouse, Inc., v. Western Assur. Co., 199 La. 715, 6 So.

2d 740; George A. Hoagland & Co. v. Insurance Co. of North America, 131 Neb. 105, 267 N.W. 239; Atlas Assur. Co. v. Lies, 70 Ga.App. 162, 27 S.E.2d 791.

Appellant argues that irrespective of the fact that the jury might have been justified in finding from the evidence that there was a windstorm in the vicinity of the insured building at the time its roof collapsed, there was no evidence tending to show that the windstorm was the direct cause of the damage sought to be recovered. On this point counsel for appellant in reply brief rely on the case of La Bris v. Western Nat. Ins. Co., W.Va., 59 S.E.2d 236. In that case Mary La Bris brought suit against two insurance companies to recover damages under windstorm endorsements attached to fire insurance policies issued by the defendant companies to the plaintiff on her two-story brick building situated in the city of Huntington, West Virginia. The complaint alleged that damages to the building were caused by windstorm and that the damages sought represented the cost of repairing the center portion of plaintiff's building, which had collapsed as the result of the windstorm. The defendants interposed by way of defense that the roof was caused to collapse by a stoppage of a drainpipe thereon. The plaintiff recovered judgment in the circuit court.

On appeal to the Supreme Court of Appeals of West Virginia, the judgment of the circuit court was reversed, the majority opinion holding that there was no competent testimony in the case to show that the collapse of the roof was the result of the windstorm.

Counsel for defendant below, appellant here, insist that the facts of the La Bris case, supra, are on all fours with those of the instant case. We cannot agree. In the La Bris case the evidence as to the velocity of the wind at the time the roof collapsed was six m.p.h. In the instant case the jury was warranted in finding that the velocity of the wind was approximately 31 m.p.h. In the La Bris case the evidence was uncontradicted to the effect that the drain on the roof was clogged at the time of the collapse and shortly before and at the time of the collapse there were 38 to 45 tons of water on the roof. That is not this case. True, there was evidence on behalf of defendant to the effect that some time previous to the day on which the roof collapsed, water was standing on the roof of the insured building. But plaintiff's testimony was to the opposite effect. Counsel for appellant here make much of a record of the Birmingham Fire Department, which defendant introduced in evidence. This was a report made by a fireman after answering a call. As pertinent, the report stated that the cause of the collapse of the roof was an accumulation of water on the roof due to a stopped drain. But defendant called the fireman who made the report to the stand, and his testimony both on direct and cross-examination shows beyond any question that the statement which he had made on his report was pure guesswork. He had not gone onto the roof. He had made no inquiry as to the condition of the roof prior to the time of its collapse. He had not examined the drain. There is another point of distinction which might well be noted. In the La Bris case the evidence showed that on the day the roof collapsed there was a recorded rainfall of 4.2 inches. In the instant case the precipitation for the same period of time was .76 inches, of which .66 inches fell between four and five p.m.

We think appellant's argument to the effect that, to accept the evidence as sufficient proof that the roof was caused to collapse by a windstorm, you must build inference upon inference, is completely answered by the decision of the Missouri court in the case of Metropolitan Ice Cream Co. v. Union Mut. Fire Ins. Co., supra.

In the very nature of things, a difficult question is raised as to just what caused the roof of the insured building to collapse. We think the issue is one which is peculiarly within the province of the jury to decide. We hold, therefore, that in this case the question as to whether or not the roof was caused to collapse by a windstorm was for the jury's determination.

■ The burden was upon plaintiff to show his insurable interest and the extent thereof. Girard Fire & Marine Ins. Co. v. Gunn, 221 Ala. 654, 130 So. 180; Aetna Fire Ins. Co. v. Kennedy, 161 Ala. 600, 50 So. 73.

That plaintiff had an insurable interest in the building to some extent appears to be conceded.

■ Defendant took the position that plaintiff was not entitled to recover more than the loss and damage to an undivided one-half interest in the insured building described in the policy of insurance. Defendant sought to have the trial court give a number of written charges to that effect, which charges were refused. The refusal of these charges defendant below, appellant here, insists constitutes reversible error.

These charges were requested on the theory that the evidence shows that plaintiff had title only to an undivided half interest in the insured building and that his insurable interest is limited to the extent of his title.

We think that defendant is correct in its assertion that under the evidence plaintiff has title only to an undivided one-half interest in the building. The evidence shows without dispute that plaintiff owned only an undivided one-half interest in the land on which the building was constructed. His wife owned the other interest. The building was paid for by plaintiff alone. The prima facie intendment is that a building when erected on the land of another shall be and is a part of the realty. Middleton v. Alabama Power Co., 196 Ala. 1, 71 So. 461; Sullivan v. Lawler, 222 Ala. 628, 133 So. 911. There is nothing in this record to overcome such prima facie intendment. By reason of the relationship of husband and wife, the presumption obtains that plaintiff intended a gift to his wife of an undivided one-half interest in the building. Stramler v. Holman, 229 Ala. 636, 159 So. 90. This presumption is in no wise rebutted by the evidence. So it seems to us that the conclusion is inevitable that plaintiff and his wife each owned an undivided one-half interest in the insured building.

The evidence is not sufficient to warrant a finding that the insurance company had knowledge of the condition of the title to the building at the time its policy was issued.

So the question is presented whether or not plaintiff's insurable interest in the building was limited to the extent of his title.

■ We have held that one can have an insurable interest although he has no property in the thing insured, or an estate, legal or equitable; that the term "insurable interest" is more extensive than property or estate; that a qualified or limited interest in the subject of insurance is sufficient; that any reasonable expectation of legitimate profit is sufficient to support an insurable interest; that whatever furnishes a reasonable expectation of pecuniary benefit from the continued existence of the subject of insurance is a valid insurable interest. American Equitable Assur. Co. v. Powderly Coal & Lumber Co., 225 Ala. 208, 142 So. 37. See Northern Assur. Co. v. Stewart, 228 Ala. 201, 153 So. 243.

In Royal Exchange Assur. of London v. Almon, 206 Ala. 45, 89 So. 76, we held in effect that just bare possession of a barn owned by the wife did not give the husband an insurable interest therein (Replication No. 1). But as to Replication A, we said, 206 Ala. 48, 89 So. at page 78: "Replication A of plaintiff to pleas 7, 8, and 12 is set out in substance heretofore in this opinion. Under it the plaintiff, the husband, shows his right to possession of the barn under contract with his wife, when the policy of insurance was executed. It appears from this replication that plaintiff was tenant of his wife, as to the land and the barn; that the barn was used by him to store his crops raised on this place; that he was to continue to farm on the land and use the barn, the consideration being he was to pay the purchase money debt due by his wife thereon. This gave the husband, the plaintiff, an interest in the barn. It was to his interest to keep it for use, and not to destroy it. Its preservation was beneficial to him under his contract with the owner. His interest was continuous therein during the life of the insurance policy. Its destruc-

tion would bring pecuniary loss to him. This contract with his wife gave him an insurable interest in the barn. That interest is the value of his leasehold in the barn, and not the value of the barn. Com[mercial] Fire Ins. Co. v. Capital City Ins. Co., 81 Ala. 320, 8 So. 222, 60 Am.Rep. 162; Horsch v. Dwelling-House Ins. Co., 77 Wis. 4, 45 N.W. 945, 8 L.R.A. 806."

While none of the Alabama cases above alluded to are factually on all fours with the instant case, they do settle the proposition that a husband may have an insurable interest in property, title to which is in his wife.

Counsel for appellant place much emphasis upon the case of La Font v. Home Ins. Co., 193 Mo.App. 543, 182 S.W. 1029, 1031, wherein the husband sought to collect for the one-half undivided interest of his wife in a homestead occupied by them and which was destroyed by fire. The husband was named in the policy as the insured. The Missouri court said in part as follows: "At the very outset, we are met with the insistence in behalf of the defendant that the plaintiff should not, as a matter of public policy, be allowed to insure the undivided one-half interest in the property owned by his wife, and collect the insurance thereon, and that no waiver or conduct on the part of the defendant could legalize such insurance. We concede that proposition to be true, and we have held that a party cannot collect insurance upon property in which he has no insurable interest. Wisecup v. American Ins. Co. of Newark, 186 Mo.App. 310, 172 S.W. 73, and Rutherford v. Sample, 186 Mo.App. 469, 171 S.W. 578."

The La Font case, supra, is certainly in conflict with our case of Northern Assur. Co. v. Stewart, supra, in so far as that case may be said to hold that knowledge on the part of the insurance company of the condition of the title of the insured property cannot operate as a waiver. The La Font case, supra, also seems to hold in effect that there can be no insurable interest in property without title. As before shown, that is not the law of this jurisdiction.

And in so far as it holds that a husband has no insurable interest in a homestead, title to which is in the wife, the La Font case, supra, definitely represents the minority view.

In Appleman on Insurance Law and Practice, Vol. 4, § 2149, it is said: "Despite all the restrictions which the courts have placed around the husband, they seem to have held unanimously that the husband has an insurable interest in the homestead on which he resides with his wife and family, even though title thereto is in the wife. Of course, where the homestead had been jointly deeded to the husband and the wife, even less question could arise." Many of the cases cited in support of the statement are found in an annotation in 68 American Law Reports, beginning at p. 362. See Horsch v. Dwelling-House Ins. Co., 77 Wis. 4, 45 N.W. 945, 8 L.R.A. 806; Kludt v. German Mut. Fire Ins. Co., etc., 152 Wis. 637, 140 N.W. 321, 45 L.R.A.,N.S., 1131, Ann.Cas.1914C, 609; Emery v. Clark, 303 Mich. 461, 6 N.W.2d 746; Basa v. Pierz Farmers Mut. Fire Ins. Co., 178 Minn. 305, 227 N.W. 39, 68 A.L.R. 359. In the case last cited it is pointed out that the rule rests upon the basis that the spouse has a pecuniary or beneficial interest and would suffer a disadvantage from its loss.

The insured building in the instant case is not the homestead, but we think the reasoning underlying the majority holdings in the homestead cases is applicable. The building was used by plaintiff as a store and delicatessen, as a means of providing a livelihood for himself and family. It was so used with the knowledge and consent of the wife, who assisted plaintiff in the operation of the building, along with their son. Plaintiff's obligation to his family was dependent upon the continued existence of the building. Certainly the preservation of the interest owned by the wife was essential to plaintiff's welfare. Unquestionably plaintiff had a pecuniary and beneficial interest and would suffer a disadvantage from damage to the building.

We think the situation here is not unlike that presented in the case of Wash-

ington Fire Relief Ass'n v. Albro, 137 Wash. 31, 241 P. 356, 359, where it is said: "It is a rule of law, founded on sound public policy, that one person cannot insure for his own benefit the property of another in which he has no interest. But the husband in this instance was not without interest. The contents of the barn, at least the hay therein, was the product of the joint labor of both the husband and wife, and was their community property. In this plainly the husband had an interest and could lawfully insure it in his own name for their joint benefit. So, also, we think, he had an insurable interest in the barn, notwithstanding it may have been legally the separate property of his wife. As is shown by the cases collected in 20 C.J. 20, under section 3, the term 'interest,' as used in the phrase 'insurable interest,' is not limited to property or ownership in the subject-matter of the insurance; that where the interest of the insured in, or his relation to, the property is such that he will be benefitted by its continued existence, or will suffer a direct pecuniary loss by its destruction, his contract of insurance will be upheld, although he has no legal or equitable title. As we have shown, the husband in this instance had a direct pecuniary interest in the maintenance of the barn on the premises, and under the rule it must follow that he had an insurable interest therein. * * *"

■ We are of the opinion that under the evidence in this case, plaintiff is shown to have had an insurable interest in the entire building and that the charges requested by defendant which in effect would limit his insurable interest to the extent of his legal interest were properly refused.

■ The policy of insurance sued on provided that the insurance company should be liable to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss. The trial court in its oral charge made no mention of such provision, but charged the jury in effect that if they found that plaintiff was entitled to recover they would award plaintiff such sum as in their sound discretion would compensate him for damages that he sustained as are covered in the policy. Defendant excepted to that portion of the charge. It is insisted on this appeal that the part of the charge excepted to was erroneous and constitutes reversible error on the ground that it submitted a question of law to the jury as to the extent of the recovery to which plaintiff was entitled. We cannot agree that the charge excepted to is subject to the criticism that it submits a question of law to the jury. In so far as it went, it stated a correct principal of law. If defendant was not satisfied with the oral charge on this point, it should have requested an explanatory charge. But in any event, reversible error is not made to appear, as the verdict of the jury is well within the evidence as it related to the cost of repairing the property with material of like kind and quality. Louisville & N. R. Co. v. Allegri, 215 Ala. 148, 109 So. 881; Kennedy v. Collins, 250 Ala. 503, 35 So.2d 92.

Upon consideration of the argued assignments of error, we find no error to reverse and the judgment will accordingly be here affirmed.

Affirmed.

LIVINGSTON, C. J., and BROWN and STAKELY, JJ., concur.