EDWARD B. HOOK, plaintiff in error, vs. STOVALL, DUNN & Co., defendants in error.*

[1.] Duty of the Court to admit material evidence to the jury, at any time before the argument before the jury is closed, provided the evidence was not within the knowledge of the party offering to introduce it before.

[2.] It is no ground for continuing a cause, that one of the jury, after he was taken to try a cause, was discovered to be incompetent.

[3.] If in defence of a note given for a negro warranted to be sound, the maker pleads her unsoundness at the time of the sale as a failure or partial failure of consideration, the sayings of the maker of the high value he placed upon the negro before her unsoundness was discovered, and also that he did not offer to return her, may be given in evidence by the opposite party to reduce the damages to which the purchaser claims to be entitled.

[4.] If, on the trial of such suit, the Court charge the jury, that "although they find the covenant to be broken, if they find that at the time of the sale, the slave in her unsound state, was worth the price for which she was sold, the defendant has sustained no damage," it is error; the jury cannot remodel the contract of the parties, and on the breach of covenant, the damages are to be ascertained by finding the difference of the value of the negro in a sound and her unsound condition.

[5.] Before the jury can find the full amount of a note given for a negro warranted to be sound, to the suit on which a plea of failure and partial failure

---

* This case was before this Court at Savannah, January Term, 1857, and will be found reported in 21 *Ga. Reports*, *p*. 69.

of consideration is pleaded, the jury must find that the negro was not dis-
eased at the time of the warranty.

[6.] Physicians are experts as to diseases, and their opinions as such, in respect
to them, are admissible in evidence; but they are not experts as to the value
of negroes, and their opinions in that respect are not entitled to higher con-
sideration than those of other witnesses.

Complaint, in Jefferson Superior Court.    Tried before
Judge HOLT, at June Term, 1858.

This was an action by Stovall, Dunn & Co. against Ed-
ward B. Hook, on a promissory note for $630, dated March
6th, 1852, and payable on or before the 1st day of January,
1853.    The defendant pleaded: First, the general issue;
second, partial failure of consideration in this: that said note
was given for a negro bought by defendant from plaintiffs
which said negro plaintiffs warranted to be sound, whereas,
the fact was otherwise, the negro being, at the time of sale,
unsound, having a disease in one of her eyes, which greatly
depreciated her value; third, total failure of consideration in
this: that by reason of said diseased eye, said negro was of
no value to defendant, and the consideration of said note
had totally failed.

The plaintiffs offered in evidence the note sued on and
closed.    The defendant submitted his proofs.    The plain-
tiffs replied and closed the case.    One of the counsel for
plaintiffs was about to open the case to the jury late in the
evening, when one of the jury complaining of indisposition,
the case was adjourned over until morning.    The Court per-
mitted the jury to separate without the usual instructions
not to allow any one to converse with them in relation to
the case, although requested to give such instructions by de-
fendant's counsel.

At the opening of the Court the next morning, the coun-
sel for plaintiffs made a motion before the Court to permit
them to offer other testimony which they had discovered
since the adjournment of the Court the evening before, and

made affidavit to that effect; which motion was resisted by defendant's counsel, upon the grounds,. first, that there was no rule of practice allowing such a proceeding; and second, that it would be establishing a very dangerous practice; which objections were overruled by the Court.

Whereupon the plaintiff then introduced one of the jurors, Elisha Smith, who testified that he was at defendant's house before he left the Carson place; thinks it was in 1855 or '56, but is not certain, that it might have been in 1854; heard defendant say that he would not take one thousand dollars for the girl; is not certain whether the conversation occurred in 1854 or 1855; that he had mentioned this fact to Henry Farmer, one of his brother jurors in the case, and that he had told it to no one else. He also stated that said conversation had stayed by him, and would always do so—that it had its effect on his mind, and would always do it, and would influence him in making up his verdict. When asked by the Court if the impressions of that conversation would influence his mind in giving a verdict in said case, irrespective of other testimony in the case, he replied that it would not, and that he did not know how the fact of the conversation with the defendant, above stated, was communicated to the plaintiffs since the adjournment of the Court the evening before.

The defendant's counsel objected to the conversation testified to by said Smith, because it was not proven to have taken place subsequent to. the development of the disease in the eye, which objection was overruled by the Court, and the witness permitted to testify.

The defendant's counsel then moved that the case be withdrawn from the jury, upon the ground that the testimony of the juror, Smith, clearly showed that he was not an impartial, unprejudiced and competent juror, which motion was overruled by the Court.

The plaintiffs then introduced *Reuben Carswell*, Esq., who testified that it was his impression that the defendant lived

at the Carson place in December, 1855; would not be certain. It might have been in July of that year.

Plaintiffs then introduced *William A. Stokes,* who testified that defendant left the county about two years ago, and left the Carson place about three or four years ago, about the year 1854 or 1855.

Plaintiffs then finally closed their case.

The defendant then recalled the plaintiff's witness, *Henry Farmer,* one of the jurors, who testified that Elisha Smith, one of his brother jurors, told him that he would tell him something when they went into the jury-room that would influence his (Farmer's) verdict, but that said Smith was mistaken in his testimony when he testified that he had told him (Farmer) what Hook had said about the value of the negro, in the jury box—that he (Farmer) had not communicated what the said Smith had told him, to plaintiffs or any one else, and does not know how the plaintiffs got the information.

Then the defendant finally closed his case.

After argument had before the jury from both sides, the Hon. Wm. W. Holt presiding, charged the jury as follows:

Gentlemen of the jury, much upon which you will have to pass in making up your verdict in this case, seems to be admitted, at least has not been contested before you; that the defendant made the note upon which suit is brought, that its consideration was the price of the female slave sold to him by the plaintiffs, and that in the sale she was warranted by the plaintiffs to be sound in every respect.

It is upon this warranty of soundness the case principally turns. In the bill of sale she is described as having one eye larger than the other, and the defendant alleges that this enlargement of the eye is a disease, and that the slave being thus unsound at the time of sale, the plaintiff's covenant is broken, and that he has a right to an abatement from her

Hook vs. Stovall, Dunn & Co.

price equivalent to the damages he has thereby sustained. The question of soundness or unsoundness is therefore directly submitted to you, and is to be decided upon the evidence produced by the parties. The defendant relies upon the opinion of two physicians, whose testimony you have heard, and upon the facts testified to by the woman in whose employment the slave was when her first child was born, of an increased enlargement of the eye consequent upon that event.

The plaintiffs rely upon the fact that the defendant kept the slave for three years without complaint of unsoundness, or offer to return her and cancel the contract of sale, he himself being a skillful physician. This he was not bound to do to entitle him to the benefits of the plaintiff's covenant; yet it is a fact, being the conduct of the defendant himself, which may be considered by you in determining the question whether that covenant has or has not been broken. If you find it to have been broken, the next thing to be considered by you will be, the damages which the defendant has thereby sustained, the just measure of which is the difference in the value of the slave sound and unsound. Her value as sound is agreed between the parties in the price to be paid. Of her value as unsound, you have the testimony of the witnesses that have been examined to that point, and the admissions of defendant as they have been given in evidence upon which you must decide, and these admissions of the defendant should have more or less weight, according to the opportunities the defendant had at the time they were made, of knowing the actual condition of the slave. Whatever difference you may find must be deducted from the note.

But, although you find the covenant to be broken, if you find that at the time of the sale the slave in her unsound state was worth the price for which she was sold, the defendant

has sustained no damage. The whole case is submitted to you upon the testimony.

The counsel for the defendant, amongst other things, requested the Court to charge the jury:

1st. That before they can find the full amount of the note sued upon to be due, they must first find that the eye was not diseased at the time of the warranty.

2d. If the jury believe from the evidence that the negro girl Mary was unsound at the time of the sale, then that the sayings of defendant as to his valuation of the negro girl are entitled to no consideration or weight in reference to the question of soundness or valuation of the negro girl, unless said sayings are proven to have occurred subsequently to the development and increased action of the disease.

3d. If it has not been proven to the jury that the defendant's valuation or consideration in relation to the valuation of said girl occurred after the development and increased action of the disease, the jury should exclude said conversation in their consideration and investigation of the issue in the case.

4th. The opinion of Drs. Dixon and Campbell in relation to what they consider the negro girl worth in their estimation, is proper evidence to be considered by the jury, as the opinion of experts.

5th. If Hook, the defendant in this case, had even paid portions of the purchase money from time to time, still it would not preclude him from holding plaintiffs to a strict compliance with their contract under warranty.

Which charges the Court refused to give, and defendant excepted.

The jury found for the plaintiffs the full amount of the note, with interest and cost of suit. Whereupon defendant excepted and assigns as error the rulings, decisions, charges and refusals to charge above set forth.

James S. Hook; and John Schley, for plaintiff in error.

E. H. Pottle, *contra.*

*By the Court.*—McDonald, J. delivering the opinion.

This cause is brought to this Court on exceptions to sundry rulings of the Court below during the progress of the trial, and also upon exceptions to the charge of the presiding Judge to the jury, and to his refusal to charge the jury as requested by the counsel for plaintiff in error.

The counsel for the plaintiff in error insists upon five of the errors assigned in the record, which are as follows:

1st. "That the Court erred in permitting the case to be reopened, after it had been closed the evening before, to permit the counsel for defendants in error to introduce a juror, whose testimony had been communicated to defendants in error or their counsel, between the adjournment and the meeting of the Court the next morning."

2d. "That the Court overruled the motion made by counsel for plaintiff in error to withdraw the case from the jury, after the testimony of the juror, Elisha Smith, showing he was not an impartial juror."

3d. "That the Court overruled objections made by counsel for plaintiff in error, to certain parts of the testimony of Isaac Averett, James C. Hudson and Elisha Smith, the juror, in relation to the sayings and acts of the plaintiff in error."

4th. "That the Court charged the jury that the admissions of plaintiff in error, as they were given in evidence, were to be considered by them, in deciding whether the negro girl was sound or unsound. And although they should find the covenant to be broken, if they should find that the slave, at the time of the sale, was worth the price for which she was sold, the plaintiff in error has sustained no damages.'

5th. " That the Court refused to charge the five points at law as requested by counsel for plaintiff in error."

[1.] The Court committed no error in permitting the case to be re-opened, to allow the defendants in error to introduce additional evidence, after the case had been closed. The Court sits to administer the law and do justice between parties litigant, and it is its duty to admit evidence material to the issue at any time before the argument before the jury is closed, provided the evidence was not within the knowledge of the party offering it, until after the case was closed. This Court has held that after a cause had been partially argued before the jury, the presiding Judge ought to have heard the testimony of a witness, who was in Court during the introduction of the evidence; but who had absented himself under the belief that his evidence was not needed.

[2.] That a juror summoned and sworn was discovered, after he was sworn, to be incompetent, from partiality, bias or prejudice, to try the cause, is no ground for putting off the trial Upon a proper showing, another juror might have been substituted.

[3.] The ruling of the Court admitting the evidence of Averett, Hudson and Smith in relation to the sayings and acts of the plaintiff in error, is sustained by us. The evidence objected to, relates to the sayings of the plaintiff in error as to his satisfaction with the negro and the high estimate he placed upon her before it was ascertained that the deformed appearance of the eye was the effect of an existing disease in that organ. There were two matters of enquiry before the jury who tried the cause. The first was, as to the soundness of the negro at the time of the warranty The second was, if she was unsound at that time, to what extent was the plaintiff in error endamaged by reason of her unsoundness. As long as the plaintiff in error regarded the appearance of the eye as a mere deformity, his sayings as to the high value which he placed upon her are not to be

considered as evidence of her soundness, for he purchased her as deformed, but also as sound. The sayings of the plaintiff in error as to her value down to the development of the disease in the eye, was certainly admissible to satisfy the jury that he had not been so much endamaged as if the negro had been wholly worthless. That the plaintiff in error did not return her nor offer to return her, neither before nor after the development of the disease of the eye, was entirely admissible in evidence before the jury. That he did not propose to return her was evidence that he was not willing to rescind the contract, but that he would be content to be allowed in a settlement whatever damage he might be entitled to for a breach of the warranty. It is not necessary, in every case, for the purchaser to propose to return the property purchased, to entitle him to an allowance of the entire consideration agreed to be paid, under an act authorizing a plea of total failure of consideration. In this trading country, where negroes, horses and mules are carried from one State to another, and sold at the residence of the purchaser, in a State other than that of the seller's residence, it would be extremely difficult and expensive for him to offer to return the property; but when the parties live at a convenient distance from each other, or the purchaser has an opportunity to return the property purchased, and he does not make such offer, his failure to do so may be submitted to the jury as evidence that there was either no breach of contract, or if there was, that he was willing to hold on to his contract, and recover, or be allowed the amount that its damaged or diseased condition reduced its value at the time of the sale.

By taking the whole evidence together, there was no indefiniteness as to which negro the evidence applied. The evidence shows that the plaintiff in error had purchased of defendants two negroes, and that he had paid for one of them; so that the price for one only is in dispute. Besides, the bill of sale of this negro and the note sued on, have the same

Hook vs. Stovall, Dunn & Co.

date, and the consideration expressed in the bill of sale, is the precise amount of the note.

[4.] The fourth ground of error relied on by the plaintiff in error in this Court, is assigned on the charge of the Court. The charge excepted to was, that, although the jury should find the covenant to be broken, if they should find, at the time of the sale, the slave, in her unsound condition, was worth the price for which she was sold, the plaintiff in error has sustained no damages.   This charge is erroneous.   It authorizes the jury to remodel the contract of the parties without their consent.   Every man, in making a contract, acts upon his own judgment *as to the value of the property* he purchases.   The plaintiff in error purchased the negro, which was the consideration of the note sued on as a sound negro, and the price stipulated between the parties was her agreed value in a sound condition.   She was warranted to be sound.   It is not to be supposed that the purchaser would have given as much for her in her unsound state, as if she had been sound.   The contrary is the legal and common sense presumption.   The charge authorizes the jury to say that, admitting the negro to have been unsound at the time of the sale and warranty, and that *that* unsoundness, according to the evidence, impaired her value, yet the purchaser ought to have given the price he paid for her, as, in our judgment, she was worth that sum in her diseased condition. If a man purchases land at so much per acre, and gives his note for the purchase money, taking a warranty that there are so many acres, and it turns out, upon survey, that there is a deficiency in the number of acres, it is no reply to a plea of this deficiency to an action upon the note, that at the time of the sale, the land conveyed, notwithstanding the deficiency in the quantity and the breach of covenant, was worth the sum agreed to be paid for the whole.

The enquiry of the jury in this case was a simple one. How much was the negro girl less valuable at the time of

the sale, by reason of the latent disease in the eye, than if she had been sound. This they might easily have determined by considering the evidence as to the effect of the disease upon her after it was developed. The difference between her value sound, without reference to the price to be paid for her, and her value, diseased as she was, being ascertained, that difference was the damage to which the plaintiff in error was entitled, and should have been deducted from the amount of the note at the time it was given. The plaintiffs in the Court below were entitled to a verdict for the balance with interest thereon. If the jury find a breach of covenant, they must look to the whole evidence, and from that come to the best conclusion they can as to the damage resulting to the injured party therefrom, and be it much or little, allow it to him.

The counsel for the plaintiff in error made, of the presiding Judge in the Court below, five requests to charge the jury, which are set forth in the statement of the case prefixed to this opinion.

[5.] The first request ought to have been given in charge to the jury. It is true, that the Court had given it in charge nearly substantially, yet being refused when a direct application was made, might have led the jury to believe that such request was not law. I am but little disposed to countenance the practice of embracing in requests of the Court to charge the jury, matters which have already been given in charge. From what I have already said it will be seen that, in our judgment, the second and third requests ought not to have been given in charge.

[6.] The fourth request to charge was properly refused by the Court. Physicians are regarded as experts as to diseases, but not as to the value of negroes, sound or unsound. In regard to value, their opinions, as physicians, are not entitled to higher consideration than that of other witnesses; and perhaps not to so much.

There is no evidence in the record to warrant the fifth request. It does not appear that the plaintiff in error had ever paid any part of the purchase money of the girl Mary. Hence the Court committed no error in refusing to give it in charge to the jury.

Judgment reversed.