JOHN M. CLARK & COMPANY, plaintiffs in error, *vs.* FRANCIS L. NEUFVILLE, defendant in error.

1. When there is a sale of goods, with a warranty of quality, and a delivery and acceptance by the buyer, and the goods prove not to correspond with the warranty, and there is no fraud by the seller, the measure of damages is the difference between the price paid and the value of the goods as they actually were at the time and place of the sale and delivery, together with such consequential damages, if any there be, as come within the rule, excluding indirect and speculative damages.

2. There can be no rescission, by the buyer, of a contract in a case of the

sale and delivery of goods, unless the buyer return or offer to return the goods, and if, by his own act, as by a sale of a portion of them, he render such delivery impossible, the buyer cannot, of his own motion, rescind.

Sale. Warranty. Measure of damages. Rescission. Before Judge GIBSON. Richmond Superior Court. January Term, 1872.

Francis L. Neufville brought assumpsit against John M. Clark & Company for $5,000 damages, sustained by plaintiff on account of the failure of defendants to deliver seven hundred and four bags of clay peas, containing one thousand three hundred and seventy-eight bushels, of the same quality as the samples exhibited to plaintiff at the time the purchase was made. Plaintiff alleged that he purchased said clay peas for the New Orleans market; that he communicated this fact to the defendants at the time of the purchase, and that the peas delivered were wholly unsuitable for said market. The defendants pleaded non-assumpsit.

The evidence disclosed the following facts: In March, 1871, defendants had in a warehouse in Atlanta seven hundred and four sacks of peas. M. Hyams, acting as agent for the plaintiff, was desirous of purchasing a quantity of the variety known as "clay peas." He was informed by defendants that six hundred and fifty-three sacks of their peas in Atlanta were of that variety, and fifty-one sacks were of mixed peas. Samples were exhibited to him. Plaintiff did not want the latter, but as defendants declined to divide the lot, he took them all at $2 35 per bushel. The plaintiff did not examine the peas, but bought by sample, the defendants guaranteeing that the bulk should be of the same quality. By the contract, the defendants were to deliver the peas on board the cars in Atlanta, consigned to Dupree, Reine & Company, New Orleans, and upon the delivery of railroad receipts, as in good order, the plaintiff was to pay the price, all of which was done. On the 17th, 19th and 20th of March, the peas arrived in New Orleans, less forty bushels

Clark & Company *vs.* Neufville.

lost in transportation, for which $2 80 per bushel was paid by the railroad, and on the 21st of March, twenty-eight sacks were sold for $3 25. A short time after their arrival, plaintiff received letters stating that the peas did not correspond with the samples, and on March 23d, 1871, he called on the defendants and so stated. The plaintiff testifies that the defendants told him to have the peas examined and the matter would be set right. On this point the evidence is conflicting. On the 29th of March, a survey was held by persons selected by the consignors, and the result declared to be that one hundred and ninety-eight sacks were up to the sample; that the rest were mixed, and that the sacks containing them were not merchantable. On the 3d of April, the plaintiff called on the defendants and told them that the peas were subject to their order. On the 7th of April, the plaintiff sent a letter to defendants, saying that unless a satisfactory arrangement was made by the morrow, the peas would be sold at their risk. The defendants declining to act, the peas were sold as follows: On the 20th of April, one hundred and seventy sacks, clay peas, at $1 90. On the 20th of April, three hundred and eleven sacks, mixed peas, at $1 75. On the 22d of April, one hundred and ninety-five sacks, mixed peas, at $1 25. These amounts, with the twenty-eight sacks previously sold on the 21st of March, made the seven hundred and four sacks. The plaintiff introduced witnesses who examined the peas in New Orleans and testified that the majority of the sacks were not clay peas. The defendants proved by witnesses who had examined the peas in Atlanta that six hundred and fifty-three sacks were clay peas. Samples were exhibited to the jury.

The Court charged the jury as follows, to-wit: "That if the peas delivered by the defendant, to plaintiffs in Atlanta, were the kind of peas which plaintiffs contracted to buy, then they should find for defendant, that being a compliance with the contract; but that if they should find that the peas so delivered in Atlanta, were not the kind which plaintiffs had contracted to buy, then the measure of plaintiffs' damages

Clark & Company *vs.* Neufville.

would be, the difference between the price paid for the peas by plaintiffs and the price for which the peas were sold in New Orleans, adding to said difference all proper expenses incurred by plaintiffs, such as freight, inspection, etc., and also interest."

In accordance with said charge, the jury rendered a verdict for the plaintiffs, for $1,651 12. Whereupon the defendant moved for a new trial, upon the ground that the Court erred in the aforesaid charge. The motion was overruled and defendants excepted, and now assign-said ruling as error.

W. H. HULL; J. C. C. BLACK, for plaintiffs in error. 1st. Damages on breach of warranty: 1 Ga. R., 591; 22 *Ib.*, 274; 23 *Ib.*, 17; 26 *Ib.*, 704; 30 *Ib.*, 418. Consequential damages not too remote may be added: Sedg. on Dam., 280. Rule same in case of misrepresentation: 30 Ga. R., 950. 2d. The rule of damages laid down by the Court can only be sustained in cases of rescission: 24 Ga. R., 441; 25 *Ib.*, 712; Sedg. on Dam., 296. 3d. Right to rescind exists when: Code, secs. 2610, 3117; 22 E. C. L. R., 196; 70 *Ib.*, 526; Smith's Mer. Law, 634; Ad. on Con., 272. 4th. There can be no rescission in part: Code, sec. 2809; 2 Pars. on Con., 679; 20 How. R., 154; 8 Greenleaf's R., 30.

BARNES & CUMMING, for defendant. 1st. The rights of the parties upon a breach of warranty are to be fixed with reference to New Orleans: Benj. on Sales, 665–671. 2d. There was a legal fraud upon the part of the sellers: Benj. on Sales, 337–345; Code, secs 2592, 3117; 36 Ga. R., 648. 3d. Distinction between breach of warranty and non-performance of contract: Benj. on sales, 443–450; 10 Ex. R., 191; 5 B. & Ald., 250; 18 Q. B., 560; 17 C. R., 619.

McCAY, Judge.

These peas were sold with a warranty, delivered according to the agreement, accepted and paid for. There is no pretence of fraud; the defendants below supposed the peas were

as described.   There has, without doubt, been a breach of the warranty, and the plaintiff was entitled to a verdict.   The only question is, what is the proper and legal measure of damages?   The Court charged the jury, in substance, that the price paid and expenses, less what the peas sold for, was the true criterion.   In other words, the Judge told the jury that if there was a breach of warranty, the peas, when the fact was discovered and notice given, were at the defendant's risk, and, as he did not take them away, they were properly sold on his account, and, being due to the plaintiff the price of the peas and the expenses of their transportation, he was entitled to a credit.

Our Code, section 2610, says, "a breach of warranty, express or implied, *does not annul the sale,* if executed, but gives the purchaser a right to damages."   If this be so, these peas were not at the risk of the defendant at any time after they were delivered, accepted and paid for.   It was not in the power of the plaintiff to make them the defendant's property again and sell them at his risk.   The *breach of the warranty* did not annul the sale.   The plaintiff had, on the breach, a right to an action for the damages done him at the sale.   He had no right to cast upon the defendant the loss caused by the fall of peas in the market, and that was no element in the wrong done him by the defendant.   And, under the evidence in this case, that, under the charge of the Court, was a material matter.

The measure of damages on the breach of warranty in an executed contract, is the difference between the price paid and the real value of the article at the time and place of sale. This is the rule adopted by this Court: 1 *Kelly*, 591; 23 *Ga.*, 17; 26 *Ga.*, 704; 30 *Ga.*, 948; and this is the common law.   Lord Tenderden, in 2 B. and Ad., 461, says: " Where the property in the specific chattel has passed to the vendee and the price has been paid, he has no right, on the breach of the warranty, to return the article sold, revest the property in the vendor and recover the price.   He must sell on the warranty, unless there has been a condition in the contract

providing for a return :" Strut *vs.* Blay, 2d B. and Ad., 461.

If there be fraud in the sale the rule is different. The sale is void, and the vendee has a right on discovery of the fraud to rescind: Sedgwick on Damages, 280. But an offer to rescind is not enough. The plaintiff must put, or offer to put, the vendee in the situation in which he found him. *He* must be able to rescind, that is, redeliver to the vendee: Code 2809, 20 Howard, 154. We will not say that the difference between the price paid, and the value of the unsound article at the time and place of sale, is the only damages that may be recovered. That is the measure of the direct damages. But if there be also indirect damages, growing directly out of the transaction, capable of computation with reasonable certainty, they may also be recovered: See Code 2893–3017, Sedgwick on Damages, 280. We think, therefore, the charge was wrong; the Judge's charge is only correct in a case of rescission. This was not, and could not, under the evidence, be such a case.

Judgment reversed.