33002.   GENERAL ELEVATOR CO. *v.* ROTARY LIFT CO.

DECIDED APRIL 28, 1950.

*Fine & Efurd,* for plaintiff in error.

*Brown & Shoob,* contra.

FELTON, J. Rotary Lift Company sued General Elevator Company to recover $1,137.81 as balance due on an open account. The defendant admitted the receipt of the machinery and merchandise listed in the account but contended that a power unit and controller was not suitable for the purpose intended and that no charge should have been made for the replacement of the pump in the unit. The defendant claimed damages against the plaintiff in the sum of $580 by reason of having to buy another make of power unit and because of certain other items of expense. The jury found for the plaintiff in the amount sued for. The defendant's amended motion for a new trial was overruled and it excepted.

The evidence shows without dispute the following facts: General Elevator Company was sales agent for Rotary Lift Company in Georgia. Swift & Company's branch at Columbus wrote Rotary Lift in 1945 asking quotations on a hydraulic unit on its elevator, giving certain information including the fact that the size of the plunger, or jack, was 4 inches. In reply to this letter Rotary Lift referred Swift & Company to the

General Elevator Company. In July, 1945, the General Elevator Company wrote Rotary Lift asking quotations on a power unit for the Swift & Company elevator, giving the size of the jack as 4 inches. To this letter Rotary Lift replied by telegraph on July 6, 1945, as follows: "Relet Swift & Company can furnish R1-7 power unit for speed and capacity required constant pressure control without leveling six hundred forty five dollars net." No order was given under these negotiations. On December 24, 1946 General Elevator Company placed an order with Rotary Lift for a "J-7 Power Unit, with 7.5 H.P., 550 volt, 60 cycle, 3 phase, alternating current motor, Full Automatic Push Button Operation from car and two landings, Automatic leveling and re-leveling." The order contained the following note: "Present Jack on car to be used. Capacity & Speed: 2500 lbs. at 40 F.P.M." and showed total weight of elevator and capacity to be 5,675 pounds. On January 10, 1947 Rotary Lift wrote General Elevator the following letter: "Rotary Lift Company, January 10, 1947. General Elevator Company, P.O. Box 1233, Atlanta, Georgia. Attention: Mr. R. J. Tuggle, Vice-President. Subject: Swift Manufacturing Company, Columbus, Georgia. Your Order A-4811. Dear Bob: I have your subject order received December 26th, and we have searched the files here and find no correspondence or anything pertaining to the Swift Manufacturing Company. I don't know why, but I was under the impression that this power unit was to replace the power unit in use on one of Rotary's old elevators. Apparently, however, it is not inasmuch as we don't seem to have a thing in the world in the files on this project. Quite some years ago, Bob, we established a policy not to furnish power unit equipment only to be used in connection with existing hydraulic equipment. The reason for this is that we did furnish at that time (quite a few years ago) a unit here and there, probably a half dozen, in converting some old jobs, and ran into all kinds of difficulties because of scale, rust, etc., in the existing jack unit getting into the pump and valve equipment, consequently operation was unsatisfactory. You can realize that even though the Rotary power unit is the only thing attached to an elevator, when trouble comes up it's a Rotary job. I do recall talking to Clint Schindler about this job, but was

under the impression at that time that this was a Rotary job. There is another angle, and that is if we furnish a power unit to these people it means that we are taking out one elevator from our schedules for the year because we could build a jack and car to go along with the power unit about the same time. No doubt you have checked over the existing elevator, but I just wonder if the present power unit is worn out, if the car, jack and all the other equipment isn't worn out also. This should be another reason why I would hesitate to put a new power unit on a bunch of stuff that would give trouble. The speed of 40 F.P.M., which you show on your purchase order, is incorrect inasmuch as we can only provide a speed of 32 F.P.M. 'up' with the 5.675 lbs. total gross capacity. 'Down' speed can be to suit. I hesitate to furnish this power unit, Bob, and the only way we could possibly furnish it is with the understanding that we accept no responsibility whatever in connection with the operation of the unit. Another thing, although I don't guess we've told you, is that our pricing structure is built up so that we need to have the jack, car, and power unit in order to come out with our normal profit because profit on our power units is comparatively low, and in fact, we should get full list price for a power unit only. Please give me your thoughts on this, Bob, and then we will go along from there. Very truly yours, Rotary Lift Company, (Jack Sanders), Sales Manager, Elevator Division: JS/k. cc-Mr. J. W. Weaver." After receipt of this letter Jack Sanders, sales manager for Rotary Lift, discussed the order and the situation in general with Clint Schindler, a sales manager of General Elevator Company, and in the discussion Sanders was told that the Swift elevator used a 5-inch jack or plunger. The only evidence tending to show knowledge on the part of Rotary Lift that the Swift elevator used a 4-inch jack was the correspondence between Swift & Company and Rotary Lift, in 1945, and between General Elevator Company and Rotary Lift, in 1945, and the uncontradicted evidence showed that at the time the order of December 24, 1946, was received by Rotary Lift all the correspondence on the subject had been taken from the files of Rotary Lift and disposed of. On January 20, 1947, Rotary Lift wrote the following letter to General Elevator Company: "Rotary Lift Company, January 20, 1947. General

484

Elevator Company, P. O. Box 1233, Atlanta, Georgia. Attn: Mr. R. J. Tuggle, Vice-President. Swift Manufacturing Co., Columbus, Georgia. Your order A-4811. Our job E-4156. Dear Bob: Clint Schindler has explained this project to me during his visit here today and yesterday, and we are now agreeable to furnishing the power unit only for the set up, inasmuch as we understand you people are going to make a nice Elevator out of this job. I have therefore, entered the order on basis of your order with the exception that I have added the releveling feature which you call for at $53.00 list price as explained in my letter to you of January 10. I will see what we can do about delivery and Allan Robinson tells me that we can possibly squeeze this job in for delivery in April. Very truly yours, Rotary Lift Company, (Jack Sanders), Sales Manager, Elevator Division." The evidence also showed that the J-7 power unit was designed to do a particular job and was not designed or intended to operate an elevator with a 4-inch jack to carry a load of 5,675 pounds. We think that the evidence demanded a verdict for the plaintiff on two theories. First, the uncontradicted evidence shows that the power unit specifically ordered was not designed or intended to operate an elevator with a 4-inch plunger. Second, there was no warranty, express or implied, that it would do so. The letter of January 20, 1947, from Rotary Lift to General Elevator Company did not amend, retract, alter or replace the letter of January 10, 1947, in which Rotary Lift expressly refused to make a guarantee, except in one respect, and that was that Rotary Lift agreed to sell the power unit separately, without the jack. Rotary Lift would not be guilty of a breach of warranty of the specific manufactured article unless it expressly guaranteed it to perform with a 4-inch jack, of which there is no evidence. *Fay & Eagan Co.* v. *Dudley & Sons*, 129 *Ga.* 314(1) (58 S. E. 826) ; *Kirkland* v. *John Deere Plow Co.*, 66 *Ga. App.* 304(2) (18 S. E. 2d, 109) ; *Kontos* v. *Jordan*, 57 *Ga. App.* 267(1) (195 S. E. 210) ; *Kreutz* v. *McCray Refrigerator Sales Corp.*, 54 *Ga. App.* 679 (188 S. E. 838) ; *City of Jeffersonville* v. *Cotton States Belting & Supply Co.*, 30 *Ga. App.* 470(3) (118 S. E. 442). There was not sufficient evidence to show that the failure of the pump was due to any fault of Rotary Lift. The evidence more nearly showed that it was due to use with a jack which was too small or from some effort to repair it.

There are exceptions to the admission of evidence and to a charge of the court, but in view of the fact that the legal evidence admitted demanded a finding for the plaintiff, any errors assigned were immaterial and harmless.

The court did not err in overruling the motion for a new trial. *Judgment affirmed.* *Sutton, C. J., and Worrill, J., concur.*