40722, 40723.   ATLANTA TALLOW COMPANY, INC. v. JOHN W. ESHELMAN & SONS, INC.; and vice versa.

DECIDED NOVEMBER 12, 1964—REHEARING DENIED DECEMBER 1, 1964.

*James M. Embry, Joseph Lefkoff, William G. Grant, Newell Edenfield,* for plaintiff in error.

*Hansell, Post, Brandon & Dorsey, Albert G. Norman, Jr., John H. Boone,* contra.

FRANKUM, Judge. Counsel for the parties have argued this case before this court upon the broad general principles involved and without specific reference to the ruling of the court with

respect to the particular grounds of demurrer. In the view which we take, a discussion of these general principles will dispose of the assignments of error, and it will be unnecessary to make specific reference to rulings on particular grounds of the demurrer. At the outset it may be well to note in passing that this case arose prior to the effective date of the Uniform Commercial Code, and that, insofar as they may be applicable, the provisions of *Code Ch.* 96-3, as the same existed at the time of the transaction under consideration, and cases decided thereunder are controlling. here, rather than the provisions of *Code Ch.* 109A-2.

The defendant tallow company, plaintiff in error in the main bill, contends with respect to counts 1 and 2 of the petition that they fail to allege a breach of any implied warranty, because the warranty relied on in those counts is that the seller "knows of no latent defects undisclosed." *Code* § 96-301 (3). It is true that if the warranty relied on is that embodied in paragraph 3 of *Code* § 96-301, then knowledge by the seller of the latent defect which caused the damage must be alleged and proved for the plaintiff to recover. *Snowden v. Waterman & Co.*, 100 Ga. 588, 591 (4) (28 SE 121). However, the petition alleges in paragraph 14 that "said tallow was purchased from defendant by plaintiff upon the warranty implied by law that the same was reasonably suited to the use intended." This allegation plainly places the plaintiff's case within the purview of paragraph 2 of *Code* § 96-301, and shows that the plaintiff is relying upon the warranty implied by law that "the article sold is merchantable and reasonably suited to the use intended." The plaintiff alleges that the defect existing in the tallow, to wit, its impure and toxic condition, was a defect which could not, in the exercise of ordinary care, be detected by the plaintiff, and it is unnecessary for the plaintiff to allege that the defendant had knowledge of the existence of the defect. *Snowden v. Waterman & Co.*, supra (headnote 1).

The defendant next contends that the allegations as to the unsuitableness of the tallow amount to no more than an allegation that the tallow sold by the defendant to the plaintiff was not reasonably suited to the particular use intended to be made

of it by the plaintiff, and that, therefore, the petition does not set forth a cause of action with respect to this element. As was said by Judge Sutton, in *Love v. Nixon,* 82 Ga. App. 445, 453 (2) (61 SE2d 423), after reviewing a number of cases, it is clear that the warranty implied by law that the article or articles sold "are 'reasonably suited to the use intended,' refers, not to any particular intended use by the purchaser, even if such intended use is made known to the seller, but to any use for which the article or articles sold are commonly intended. As was stated in the *Kreutz* case [*Kreutz v. McCray Refrig. Sales Corp.,* 54 Ga. App. 679, 188 SE 838], 'use intended' as it appears in the statement in the Code is not equivalent in import to 'use intended by the buyer.' " However, we have examined most, if not all, of the cases in Georgia applying this doctrine with respect to implied warranties in the sales of personal property, and it is clear from an examination of such cases that this doctrine arose as an exception to the implied warranty that the article sold is merchantable and reasonably suited to the use intended in those cases where the purchaser purchased the article with the disclosed or undisclosed intention of putting it to a use for which it was not designed, manufactured or produced. See, for example, the following cases: *Colt Co. v. Bridges,* 162 Ga. 154 (5) (132 SE 889) (acetylene generator); *Crankshaw v. Schweizer Mfg. Co.,* 1 Ga. App. 363 (12) (58 SE 222) (showcases); *Hawley &c. Furnace Co. v. Van Winkle Gin &c. Works,* 4 Ga. App. 85, 86 (60 SE 1008) (furnace); *City of Moultrie v. Schofield's Sons Co.,* 6 Ga. App. 464 (65 SE 315) (boiler); *Barber & Sons v. Singletary,* 13 Ga. App. 171, 172 (78 SE 1100) (mule); *City of Jeffersonville v. Cotton States Belting &c. Co.,* 30 Ga. App. 470 (118 SE 442) (steam compressor); *Kreutz v. McCray Refrig. Sales Corp.,* 54 Ga. App. 679, supra (refrigerated fresh meat display counter); *General Elevator Co. v. Rotary Lift Co.,* 81 Ga. App. 481 (59 SE2d 272) (rotary lift for elevator); *Love v. Nixon,* 82 Ga. App. 445, 453, supra (grape vines).

In this case the plaintiff clearly alleged in paragraph 5 of each count that the defendant was engaged in the business of manufacturing and processing and selling animal fat for use as

an ingredient in poultry feed and poultry feed concentrates. The plaintiff alleged that it purchased the tallow to be used for that purpose, that is, the purpose for which it was manufactured by the defendant, and by reason of its toxic and impure condition, it was not reasonably suited to the use for which it was manufactured and intended to be used. Clearly, these allegations are sufficient to show a violation of the implied warranty provided for in paragraph 2 of *Code* § 96-301, and counts 1 and 2 of the petition state a cause of action as against the general demurrers.

Another contention argued by the tallow company in connection with the assignments of error contained in the main bill of exceptions is that the plaintiff cannot recover in this action for any sums paid by it to its customers in satisfaction of its own independent warranty, and that the warranty implied by law under *Code* § 96-301 (2) does not run with the article sold. Cited in support of this contention is the case of *Smith v. Williams*, 117 Ga. 782 (45 SE 394, 97 ASR 220). We think that case is clearly distinguishable from this case. In the first place, the warranty there breached was one of title, and not of merchantability. That case merely applied the rule which had long been well established that the measure of damages in cases involving breaches of warranty of title is the purchase money with interest and expenses properly incurred by the vendee in attempting to defend his title; but not for expenses incurred by others in asserting or defending rights warranted by their immediate vendor. Cases respecting breaches of the implied warranty of merchantability and suitability to the use intended under *Code* § 96-301 (2) do not stand on so narrow a base with respect to the damages allowed, and we think that the distinction is based on sound reason and logic. This is so because breaches of warranties respecting the quality of goods, especially where the breach relates to latent defects, frequently and often do result in damages to the purchaser in excess of the purchase price of the article. Fundamental reason and logic dictate the rule that those damages which arise by reason of a breach of that sort of warranty, that is, those damages which are causally connected with it, ought to be recoverable, so long as the circum-

stances attendant upon the sale of the product show that the parties might reasonably have contemplated that a loss of the nature claimed might occur upon breach of the warranty, even though the exact loss or manner in which it is incurred may not have actually been within the minds of the parties at the time the contract of purchase and sale was entered into. Thus the cases have rather clearly established the rule that so long as the relation of cause and effect can be demonstrated, and the loss can be shown to have proximately flowed from the alleged injury, mere difficulty in fixing the exact amount of such damages will not bar their recovery. This rule was perhaps most clearly and succinctly stated by Judge Jenkins in *Ayers v. John B. Daniel Co.*, 35 Ga. App. 511, 512 (1) (133 SE 878), where he said: "The rule against the recovery of vague, speculative, or uncertain damages relates more especially to the uncertainty as to cause, rather than uncertainty as to the measure or extent of the damages. Mere difficulty in fixing their exact amount, where proximately flowing from the alleged injury, does not constitute a legal obstacle in the way of their allowance, when the amount of the recovery comes within that authorized with reasonable certainty by the legal evidence submitted. 17 CJ 756, 757." In that case the plaintiff had ordered a certain drug or chemical for the treatment of his apple trees, expressly advising the dealer of the use intended. Instead of furnishing the product ordered the dealer furnished a quantity of it and, by mistake, a quantity of another chemical which was shown by the evidence to have a deleterious effect upon the young fruit, foliage and tender growth of the trees when applied to them. Plaintiff, without knowing or being charged with notice of the mistake, applied the deleterious product to the trees at a time when they had reached a point of development at which the yield was capable of ascertainment with reasonable certainty, in that the trees already had in existence a crop of young apples. Upon application of the deleterious product the existing fruit, foliage and tender growth was to a large extent killed and the fruit was caused to shed. Plaintiff was permitted to show the extent of the injury by introducing evidence of the character of the soil, the condition of the fruit, the nature of the season, the character of

the cultivation, and the amount of crop realized from the trees in the orchard where the deleterious product was applied, as compared with those same factors in adjoining orchards where the deleterious product had not been applied, and further, by comparing the crops harvested from the same orchard in that year and previous years. The court said that the damages sought to be proved were not too vague and speculative to be the basis of a recovery. It will be noted in that case as in this case that no recovery was sought for loss of profits, and that the recovery sought was merely for the value of the fruit destroyed and the damage to the trees resulting from the injurious effects occasioned by the use of the deleterious product.

We find no authority for the conclusion that the plaintiff's damages in a case like this must be limited to the purchase price of the product, together with interest. As early as November 1846, the Supreme Court at least tacitly recognized that there might be other elements of recovery besides the mere purchase price, and the court said in the case where a Negro slave was sold with an express warranty that she was sound in body and mind and it appeared that she had thereafter died of a disease of the lungs with which she was afflicted at the time of the sale, that the plaintiff was entitled to recover "at least the price paid to the defendant." *Badgett v. Broughton,* 1 Ga. 591. Of course, in that case no other element of damages was claimed, and it may be conceded therefore, that this statement was mere obiter. A similar situation confronted the court in *Feagin v. Beasley,* 23 Ga. 17, 20, involving a slave sold with an express warranty as to soundness of body and mind. One of the assignments of error contained in the motion for a new trial in that case was that the court erred in charging the jury that they could find for the plaintiff only the purchase money paid for the slave and could not find anything for doctor's bills or other expenses incurred by the plaintiff on account of the unsound health of the slave. In affirming the grant of a new trial the Supreme Court stated that usually the purchase price agreed between the parties is the best evidence of the value of the property at the time of sale, and that if the product sold was wholly worthless, then that would be the measure of damages. "Whether anything by

way of expense should be superadded is a question not very well settled by authority. Perhaps an extraordinary outlay, as for medical attendance, rendered necessary by reason of the unsoundness of the property, might come in, especially if the services were needed before notice, or an offer to rescind could be made by the buyer. To entitle the purchaser for any additional amounts, as for the keep of the negro, he should offer to rescind, and thus give the seller an opportunity of deciding whether he will take back the property." Of course, in a case like the one which we are presently considering, the nature of the article sold and the use to which it was put renders it impossible for the plaintiff to rescind and return the product sold.

In *Boone v. Lewis*, 35 Ga. App. 478 (133 SE 653), the action was one for damages brought by the purchaser against the seller of a carload of hogs purchased under an implied warranty of merchantability and suitability to the use intended. The hogs were shipped by the defendant to the plaintiff's consignee at Rocky Mount, North Carolina, but when the hogs were unloaded for feeding and watering at Atlanta, it was discovered that they were infected with cholera. In that case it was held that in addition to the difference between the price paid for the hogs and their actual value as reduced by their defective condition, the plaintiff could recover expenses properly and reasonably incurred by him in going to Atlanta in order to lessen the loss caused by the disease. The courts have consistently refused to allow the purchaser of defective fertilizer to recover against the seller the value of crops which might have been produced had the fertilizer not been defective, on the theory that the failure of the farmer to make a profit on the crop upon which he used the allegedly worthless fertilizer is too remote to be the basis for damages for a breach of the warranty that the fertilizer was reasonably suited for the use intended. However, in a number of cases the courts have permitted the recovery of damages treated as indirect damages in the nature of expenses incurred by the buyer in hauling worthless fertilizer, actual out-of-pocket expenses in distributing it on his field, and the expenses incurred in working the crops to which the fertilizer has been applied, all in addition to the difference between the purchase price and the

actual value of the fertilizer. See for example, *Griffin v. Taylor,* 65 Ga. App. 346, 351 (1) (16 SE2d 186). Such damages may be recovered so long as they are capable of computation with reasonable certainty. In *Speed Oil Co. v. Griffin,* 73 Ga. App. 242 (36 SE2d 205), the plaintiff who had purchased gasoline from the defendant upon an implied warranty that it was merchantable and reasonably suited for the use intended was permitted to recover amounts paid to mechanics for their efforts in endeavoring to find the trouble caused by the unsuitable gasoline, by changing the oil, wires, battery and carburetor of the plaintiff's automobile, and reasonable amounts paid out in good faith by the plaintiff on the advice of such mechanics for any parts or appurtenances to the automobile occasioned by the failure of the motor fuel to properly perform therein after it had been placed in the tank. The items of recovery thus permitted far exceeded the purchase price of the few gallons of gasoline involved. The court there pointed out that whether or not the particular item or items of expense were reasonable under the circumstances in the case was a question for the jury. This latter ruling is consistent with many other cases that could be cited where the courts have upheld recovery of remote or consequential damages in cases where they could be traced solely to the breach of the contract. *Code* § 20-1406. In *Allen Tile &c. Co. v. Vinyl Plastics, Inc.,* 99 Ga. App. 186 (107 SE2d 881), it was held that the defendant, when sued for the purchase price of a quantity of floor tile furnished by the plaintiff, could, in a cross action for a breach of the implied warranty alleging that the material sold was not suitable to the use intended, in addition to defeating the plaintiff's right to recover the purchase money for the tile, recover such amounts as it had actually expended in trying to correct the defective condition in the tile and in making good to its customer damages sustained as a result of the defects in the tile sold by it to such customer. The closest case dealing with this question that we have found is *Dixie Seed Co. v. Smith,* 103 Ga. App. 386 (119 SE2d 299). There the plaintiff, a seed dealer, purchased from the defendant a quantity of collard seed for $715. The seed were expressly represented to be Vates collard seed. The plaintiff resold the seed to two pur-

chasers who planted them, and upon their germination and growth it was discovered that the plants were Georgia type rather than Vates type collards. As a result plaintiff alleged that its vendees sustained losses totaling $1,574.50, which it had paid to its vendees in satisfaction of their claim. Plaintiff sued for the amount so paid, and this court held that the petition, as against a general demurrer, stated a cause of action based on an express warranty. Insofar as the contention here made seeks to raise a question as to the right of the plaintiff to recover as items of damages the amount which it paid its customers, the ruling in that case is directly controlling. In addition to the cases heretofore discussed, see the following: *Hook v. Stovall, Dunn & Co.,* 26 Ga. 704 (4); *Gaulden v. Shehee,* 30 Ga. 948; *Clark & Co. v. Neufville,* 46 Ga. 261, 265; *Morris v. Barnwell,* 60 Ga. 147, 149 (2); *Butler v. Moore,* 68 Ga. 780 (45 AR 508); *Cochran v. Jones,* 85 Ga. 678 (5) (11 SE 811); *Berry v. Shannon,* 98 Ga. 459 (1) (25 SE 514, 58 ASR 313); *Florence v. Pattillo,* 105 Ga. 577, 581 (1) (32 SE 642); *Oxford Knitting Mills v. Wooldridge,* 6 Ga. App. 301, 302 (64 SE 1008); *Thornton & Warren v. Cordell,* 8 Ga. App. 588 (3) (70 SE 17); *National Refrigerator &c. Co. v. Parmalee,* 9 Ga. App. 725 (1, 2) (72 SE 191); *Prince v. Evans,* 23 Ga. App. 660 (2) (99 SE 132); *Codman v. Roberds,* 27 Ga. App. 559, 560 (9) (109 SE 536); *Horne & Ponder v. Evans,* 31 Ga. App. 370 (5) (120 SE 787); *Firestone Tire &c. Co. v. Shore,* 31 Ga. App. 644, 646 (121 SE 709). None of the damages sought to be recovered by the plaintiff in this case are too remote or speculative to be recovered.

The foregoing disposes of all of the contentions of counsel for the plaintiff in error respecting the sufficiency of counts 1 and 2 of the petition to set forth a cause of action based on an implied warranty. With respect to counts 3 and 4, which the plaintiff contends are based upon an express warranty, one other contention of the plaintiff in error (defendant) should be examined. This is the contention that the allegations of these counts are insufficient to set forth a cause of action based on express warranty, in that they do not show that the warranty was made contemporaneously with the particular sale here involved. Allegations of counts 3 and 4 in this regard are as follows: "12.

During September of 1957, and on several subsequent occasions, defendant represented and warranted to plaintiff that the tallow known as 'No. 1 Tallow' processed and sold by defendant would not be injurious to poultry or cause toxic conditions in poultry if used as an ingredient in plaintiff's poultry feeds and poultry feed concentrates. 13. In reliance on said express warranty, plaintiff made various purchases from defendant of such No. 1 Tallow during the period of 1957, to August 18, 1960. 14. On August 18, 1960, plaintiff, in reliance on said express warranty, and believing the same to be true was induced thereby to order and did place an order with the defendant for 9,000 gallons of such No. 1 Tallow, to be equally divided into two deliveries to plaintiff's plant in Chamblee, Georgia. Pursuant to said order, defendant, by and through its agents and servants, delivered 4,000 gallons of tallow to plaintiff's plant in Chamblee on August 29, 1960. 15. Prior to and at the time defendant delivered the tallow above described to plaintiff, defendant knew that said tallow was being purchased by plaintiff for use as an ingredient in its poultry feeds and poultry feed concentrates. At said time defendant had the further knowledge that if such tallow was impure or toxic, complete poultry feed manufactured by plaintiff containing such impure or toxic tallow, as well as poultry feed prepared by plaintiff's customers with poultry feed concentrates containing such impure or toxic tallow, would either be fatal to poultry, or would cause unhealthy birds, the market value of which would be substantially reduced."

An express warranty has been defined as "a statement or representation made by the seller of goods, contemporaneously with and as a part of the contract of sale, though collateral to the express object of it, having reference to the character, quality, or title of the goods, and by which he promises or undertakes to insure that certain facts are or shall be as he then represents them." *Elgin Jewelry Co. v. Estes & Dozier*, 122 Ga. 807, 810 (50 SE 939). This is one definition of an express warranty which seems to be consistent with definitions adopted by the courts of other jurisdictions. See cases cited in 77 CJS 1115, Sales, § 301, and page 1135, Sales, § 309, and 46 Am. Jur. 482, Sales, § 299. However, no Georgia authority has been called

to our attention holding that this definition requires the conclusion that the statement of warranty by the seller must have been made exactly at the instant of the sale. But, where the petition fails to allege that it was in existence or in effect at the time of the sale, and where the facts alleged in the petition do not demand an inference that the warranty was made contemporaneously with the sale, or that it was contemplated by the parties that it was to be a continuing one and that whatever goods were bought or sold within a reasonable time after the making of it, and upon the strength of it, would be protected by it, the petition is subject to demurrer. It is not necessary that an express warranty be simultaneous with the sale, it being enough, insofar as proof of the existence and effect of the warranty is concerned, that it is made under such circumstances as to warrant the inference that it enters into the contract as finally made. See Leavitt v. Fiberloid Co., 196 Mass. 440 (82 NE 682). But when a pleader seeks to allege a cause of action based on an express warranty, the petition must expressly set forth these essential allegations, or the facts otherwise alleged must demand the inference that the warranty relied on was made, and understood by both parties, to be applicable to the particular sale involved, or the petition will be subject to a general demurrer. Unless no other inference is permissible, these essential allegations cannot be supplied in the absence of express averments. *Moore v. Moore,* 188 Ga. 303, 305 (4 SE2d 18); *Orient Ins. Co. v. Dunlap,* 193 Ga. 241, 249 (17 SE2d 703, 138 ALR 916); *Houston v. Pollard,* 217 Ga. 184, 187 (121 SE2d 629). In this case, however, construing the allegations of the petition most strongly against the pleader, and construing the petition in the light of its omissions as well as in the light of its averments, while the alleged express warranty was made sometime during September of 1957, and on several subsequent occasions, it is not alleged that the warranty was made contemporaneously with the sale here involved, or that it was made on a continuing basis or that it was expressly and mutually understood by the parties to be applicable to the sale here involved. The mere fact that the plaintiff purchased in reliance upon the warranty, or that the seller sold with knowledge of the intended use by the purchaser

is not the equivalent of an allegation that the seller intended in making its previous statements of warranty to warrant the particular tallow purchased on the sale here involved. An express warranty is a contract, and in order for a petition to set forth a cause of action based thereon it is essential that it show that both parties to the alleged contract understood and agreed to the same thing. Under these circumstances counts 3 and 4 of the petition were insufficient to set forth a cause of action based on the breach of an express warranty.

In the cross bill of exceptions error is assigned on the judgment sustaining the grounds of general demurrer to counts 5 and 6 of the petition. Count 5 was based on the theory that the plaintiff in paying to its customers sums in reimbursement for damages which they sustained on account of the impure and toxic condition of the tallow became subrogated to the claims of such customers against the defendant manufacturer of the tallow. Count 6 was premised on the theory that the payment by the plaintiff of such sums unjustly enriched the defendant to the extent that the defendant was relieved of its liability to the plaintiff's customers therefor. It is conceded that the right to recover under both of these counts is dependent upon the further premise that the plaintiff's customers were the ultimate consumers of the tallow and that the defendant was liable to them under *Code Ann.* § 96-307, as the manufacturer of the tallow which was sold to them by the plaintiff as new property and warranted by the defendant under the aforesaid Code section to the plaintiff's customers, the ultimate consumers, to be merchantable and reasonably suited to the use intended. The fallacy of this position, however, is demonstrated by the fact that the plaintiff's customers did not purchase "tallow" from the plaintiff, but purchased either complete poultry feed or poultry feed concentrate which had as one of several ingredients the tallow manufactured by the defendant. As we construe the allegations of the petition, tallow incorporated in its poultry feed and poultry feed concentrates, became so changed in form as to be no longer identifiable as tallow, and under these circumstances the plaintiff was the ultimate consumer of the tallow which it used in the manufacture of a completely new product

or products.  See Barbe v. Cummins Construction Co., 49 FSupp. 168, 171 (3) (Dist. Ct. Md.); Divins v. Hazeltine Electronics Corp., 70 FSupp. 686 (S. D. N. Y.); James V. Reuter, Inc. v. Walling, 137 F2d 315, 318 (4) (C.C.A. 5).

From what has been said above, it is clear that the trial court did not err in overruling the demurrers to counts 1 and 2, nor in sustaining the demurrers to counts 5 and 6.  For the reasons set forth the court erred, however, in overruling the demurrers to counts 3 and 4.

*Judgment affirmed in part and reversed in part on the main bill; affirmed on the cross bill.  Russell and Pannell, JJ., concur.*