**NATIONAL HILLS SHOPPING CENTER, INC.**

v.

**INSURANCE COMPANY OF NORTH AMERICA, Defendant and Third-Party Plaintiff**

v.

**CECO CORPORATION, Third-Party Defendant**

**and**

**J. Hal STOCKTON and William Ed Clark, d/b/a J. C. Stockton & Son, Third-Party Defendants and Fourth-Party Plaintiffs**

v.

**Howell C. JONES, Jr., Fourth-Party Defendant**

**and**

**Stanford WOODHURST, Jr. and Gilbert O'Brien, Fourth-Party Defendants and Fifth-Party Plaintiffs**

v.

**James C. SMITH, Fifth-Party Defendant.**

**No. 1438.**

United States District Court
S. D. Georgia,
Augusta Division.

Jan. 13, 1970.

William C. Reed, Augusta, Ga., for Insurance Co. of North America.

John D. Capers, Augusta, Ga., for The Ceco Corporation.

W. Barry Williams, Augusta, Ga., for J. C. Stockton & Son.

LAWRENCE, Chief Judge.

### ORDER

National Hills Shopping Center, Inc., sues Insurance Company of North America claiming that a building owned by it was damaged by a windstorm. The insurer, denying liability, asserts that the collapse of the roof was not caused by a windstorm but by defective supporting members placed in the building during construction.

Defendant filed a third-party complaint against J. C. Stockton & Son, plaintiff's general contractor in the construction of the building, and against Ceco Corporation which prefabricated the roofing joists. The insurer alleges that the joists were not in accordance with the plans and specifications. It claims that there was a breach of contract by the third-party defendants who knew or should have known of the defective materials. Claiming that it is subrogated under the policy and by law to the rights of National Hills Shopping Center, Inc., as to a recovery against third parties in connection with the loss, defendant seeks judgment against Stockton & Son and Ceco Corporation for such sums as may be adjudged against it in the suit on the policy.

The third-party action produced a chain reaction. Ceco was impleaded by Stockton & Son and the latter brought fourth-party complaints against the architects and against Conway Steel Construction Company which installed the steel joists. The architects brought a fifth-party complaint against Smith, the mechanical engineer. There are also cross-claims among the various impleaded parties.

Stockton & Son and Ceco Corporation have moved to dismiss the third-party action on various grounds including the contention that the suit on the policy and the action over against them are mutually exclusive. They argue that if a jury should find for the assured in the former case, the ineluctable result is that the proximate cause of the collapse of the roof was the windstorm and not defective construction.

Counsel for Insurance Company of North America contend that a jury finding that the efficient cause of the loss was by windstorm does not preclude the existence of a contributing factor such as negligent construction and that an insurer which is subrogated to the insured's contract rights against a third-party who is at fault may thereafter go against the latter and recover at least to the extent of its contribution to the insurance loss.

The matter of contributory causative factors in windstorm insurance cases frequently comes before the courts as a defense by insurers claiming same to be the cause of the loss as opposed to wind. In Travelers Indemnity Co. v. Wilkes County, 102 Ga.App. 362, 116 S.E.2d 314, the insurance company contended that the proximate cause of the damage was the weakening of a wall due to the effects of a recent roof fire. "In the absence of a specific provision in the policy to the contrary," said the Court,

"it is generally sufficient, in order to recover upon a cyclone, tornado, or windstorm policy, to show that the cause designated therein was the efficient cause of the loss, although other causes contributed thereto." Quoting 29A Am.Jur. 445, "Insurance," § 1329 p. 445. The question in such cases is, was there a windstorm? "Then the question would arise as to whether the cause of the damage was the windstorm or a poorly erected ceiling, etc." General Insurance Co. of America v. Davis, 115 Ga.App. 804, at 811, 156 S.E.2d 112, 116; affirmed, Davis v. General Insurance Company of America, 223 Ga. 686, 157 S.E. 2d 270.

■ The gauge by which an insurer's liability is to be measured is whether the windstorm was the proximate, dominant and efficient cause of the loss. See, in addition to the Georgia cases, Roach-Strayhan-Holland, Post No. 20, American Legion Club, Inc. v. Continental Insurance Company of New York, 237 La. 973, 112 So.2d 680; North British & Mercantile Insurance Co. v. Sciandra, 256 Ala. 409, 54 So.2d 764, 27 A.L.R.2d 1047; Schaeffer v. Northern Assur. Co. (Mo. App.), 177 S.W.2d 688; Couch on Insurance 2d § 42: 336–338; 93 A.L.R.2d 136f., 171ff. Judge Ainsworth thus summarized the rule: "In order to recover under a windstorm policy, it is not necessary that the windstorm be the sole cause of the damage. That a structural defect in the building may have been a contributing factor is immaterial. If the damage would not have occurred in the absence of a windstorm, the loss is covered by the policy." Milan v. Providence Washington Insurance Company, D.C., 227 F.Supp. 251.

Only one decision has been brought to my attention in which a windstorm insurer has filed a third party complaint against a person whose fault is alleged to have contributed to the loss. In Concordia College Corp. v. Great American Insurance Company et al., 8 Cir., 14 F.R.D. 403, the impleaded third parties, an architect and a steel erector, were charged with breach of contract and negligence in connection with the framework of a building claimed to have been damaged by a windstorm. The Court permitted the third-party proceeding to proceed. However, the decision seems to have dealt only with the procedural aspects and the Court did not pass on the question of substantive law as to right over by the insurer in such cases.[1]

■■ Upon payment of a loss an insurer is subrogated to the rights of the assured. The right here is that of the insured to sue the general contractor and prefabricator on the theory of breach of warranty as to workmanlike performance and fitness for use of materials. The right of the insurer, being derivative, is neither greater nor less than the right of the assured.[2] In the main case the plaintiff claims that the proximate cause of the roof damage was windstorm. The insurer says that it was faulty construction of the roof. If the defendant prevails, there is no longer a third-party problem. But suppose the insurer is unsuccessful? Does the verdict against it in the suit on the policy foreclose any right of action by it as subrogatee against a third-party where breach of warranty by the latter was a factor in the loss?

■■ In the suit on the policy the principal issue is whether the proximate cause of damage was the alleged windstorm or the alleged negligent construction. In the third-party action, liability of the general contractor and/or steel prefabricator would arise out of breach of implied warranty in respect to workmanlike quality of work and fitness of

---

1. An examination of the briefs in the case confirms this statement. They were made available to the Court through the kindness of D. H. Clausen, Esq. of the Chicago Bar who was of counsel for the insurer in the *Concordia College* case.

2. I will add that it would seem a strange sort of *right* which if asserted by the assured would amount to felo-de-se in respect to recovery under the windstorm policy.

materials for the use intended. In the latter case we are confronted with an issue similar to that of causation in the suit on the policy. In the warranty action the question will be whether the damage was the natural and direct result of the breach of implied warranty. The Georgia statute (Code § 20–1407) speaks in terms of damages which arise naturally and as the probable result of the breach of contract. In breach of implied warranty in sales buyers may recover damages which are the proximate result of such breach. 77 C.J.S. Sales § 374, p. 1316f.; Atlanta Tallow Company, Inc. v. John W. Eshelman & Sons, Inc., 110 Ga. App. 737, 744, 140 S.E.2d 118. In suits for breach of implied warranty as to workmanlike performance the courts speak of damage "caused" by the breach or the "direct result" thereof or damage "occasioned" by the breach. The proximate cause concept of the law of torts and in a breach of contract seem to differ only in that the probable and natural consequences of the breach must have been foreseeable at the time the contract was entered into. 5 Williston on Contracts § 1344.

■ What I am groping toward is the idea that an estoppel against the insurer may exist if the insured prevails. There are two troubles with this approach. To create estoppel by judgment the parties must be the same or in privy. Ga.Code § 110–501; King Sales Co., Inc. v. McKey, 105 Ga.App. 787, 788, 125 S.E.2d 684; Smith v. Wood, 115 Ga.App. 265, 154 S.E.2d 646. Neither Stockton & Son nor Ceco is a party to the main action nor the privy of a party thereto. In the second place, assuming a verdict establishing the fact that damage to the insured building was proximately caused by windstorm, it does not necessarily follow that the subrogated insurer may not nonetheless proceed against the contractor for breach of the latter's warranty. What on the surface appears to be an identical causation issue in the policy and warranty actions possesses on closer examination qualitative differences. A new dimension is added to the litigation.

The issue in the warranty case is more complex than that in the suit on the policy. I am unable adequately to define and categorize the difference but I am satisfied that it exists. In my opinion, a finding that the loss insured against would not have occurred except for the windstorm does not mean that there was no breach of implied warranties by the general contractor or steel prefabricator. Suppose a jury should find that there was unworkmanlike performance on the part of the latter and that the breach was a material factor in the collapse of the roof? Or suppose a jury should find that had the quality of work and materials measured up to the implied warranties the force of nature alone would not have produced the damage to the roof. In other words, had there been workmanlike performance, the *particular* windstorm may not have caused the roof to collapse. In such event, are a recovery by the insured under the policy and the suit by the insurer in warranty mutually exclusive?

■ I answer this question in the negative. I will add that there are no in-betweens. If the insurer is unsuccessful in its defense under the policy but successful in the warranty case, it is entitled to recover back the entire loss. This is not a case where a jury can apportion damage or liability. In suits against joint trespassers it may specify the particular damages to be recovered from each defendant. Ga.Code § 105–2011. One tort feasor may enforce contribution from another as though the two had been jointly sued. Ga.Code § 105–2012. As between a negligent plaintiff and a negligent defendant their respective fault may be compared and reflected in the amount of the jury award. But Georgia law makes no provision for apportioning the degree of responsibility in a case of this type.

Of course, in overruling the motion to dismiss the third-party complaint I am merely guessing what the appellate courts of Georgia would say in this case. Perhaps between now and the time of

trial some court will come along and shed greater light on the issue than I have. I hope so.

The third-party actions are permitted to proceed with limitations. The insurer is not subrogated to assured's rights, under the terms of the policy, until it pays the loss. My present inclination is to try the action on the policy first. In the trial the insurer can develop its defense as to the role of faulty construction. If it is unsuccessful, the same jury after payment of the loss to the insured (or deposit of the amount of the verdict in the registry of the Court) will then consider the same evidence as well as additional testimony as to the breach of implied warranty theory. It will also hear evidence in the cross-action brought by Stockton & Son against Ceco. After these issues are decided the same jury will pass upon the issues in the fourth and fifth-party actions. With this approach it is possible that some degree of order may be salvaged out of what can be a chaotic litigation.