**WILKERSON SHOE COMPANY,**
Plaintiff,

v.

**UNDERWRITERS INSURANCE CO.,** a
corporation, Defendant.

**UNDERWRITERS INSURANCE CO.,** a
corporation, Third-Party Plaintiff,

v.

**NATIONAL REALTY INVESTORS TRUST OF BOSTON,** d/b/a Northland Shopping Center, et al., Third-Party Defendants.

No. 72–C–226.

United States District Court,
N. D. Oklahoma,
Civil Division.

July 30, 1975.

Kenney, Leritz & Reinert, St. Louis, Mo., Thomas R. Brett, Tulsa, Okl., for plaintiff.

Ralph C. Kleinschmidt, St. Louis, Mo., Alfred B. Knight, Tulsa, Okl., for defendant.

## MEMORANDUM OPINION

DAUGHERTY, District Judge.

This is an action on an insurance policy. The Plaintiff operated a shoe store in Frougs Department Store situated in a separate building in the Northland Shopping Center in Tulsa, Oklahoma. The Plaintiff obtained from the Defendant a policy of insurance protecting its store against loss or damage from windstorm or lightning.[1] At about 2:00 a.

---

1. The pertinent policy provisions as to windstorm are:

"This policy insures against all direct loss caused by:

m. on September 6, 1971 approximately one-half of the roof collapsed doing considerable damage to merchandise and furniture and equipment of the Plaintiff.[2] No one was in the building at the time and apparently no one saw the collapse. The building was approximately 200 feet by 160 feet by 20 feet high with a flat felt and tar roof with gravel covering. Plaintiff alleges herein that its loss was due to windstorm either in the form of a tornado or very high velocity winds or lightning. No evidence of loss from lightning was presented and Plaintiff's two experts testified to the effect that the building was hit by a tornado. Defendant resists Plaintiff's claim asserting that the building collapse was due to the failure of an 80 feet pre-stressed concrete beam which rested on two twenty foot concrete columns and which beam formed a part of the roof structure of the building. In this connection Defendant claims that the concrete in the area of the breaks in the center of this beam tested out only about one half of the required strength and that a heavy accumulation of rain on the roof added to the cause of the collapse on the above date. The policy does not cover loss by rain unless the building shall first sustain damage to roof or walls by the direct action of wind.

On the causation issues of windstorm or structural defect or a combination of both the case was tried to a Jury with another Judge of this Court presiding. The verdict of the Jury was for the Defendant. The presiding Judge granted a new trial and then asked the undersigned Judge to handle further proceedings in the case.

Defendant by third party practice under Rule 14, F.R.Civ.Proc. brought in the owners and constructors of the building as Third Party Defendants claiming that if it should be found liable herein to the Plaintiff that the Third Party Defendants would be liable to it for all of Plaintiff's claim against it due to their responsibility for the alleged defect in the construction of the building. By agreement of all parties, the Court under Rule 42(b) F.R.Civ.Proc. separated for trial purposes the issues presented by the Complaint and the Third Party Complaint. The parties agreed to try the case to the Court sitting without a jury.

After hearing the evidence the Court finds and concludes that the building collapsed due to a defective 80 foot prestressed concrete beam and a heavy accumulation of rain on the roof and the roof collapse was not due to windstorm, either in the form of a tornado or high velocity winds or lightning. Thus, Plaintiff's loss was not covered by Defendant's policy of insurance.

Plaintiff's evidence was that a car wash some four miles away suffered the loss of its roof which was laid over a few feet by a tornado; that the roof of a building in an apartment complex some four to five miles away was partially blown off and two other buildings in the complex received damage to brick wing type walls and that some wall and window damage was sustained in the Tulsa Civic Center Complex in downtown Tulsa some three and one half miles from Plaintiff's building. Plaintiff presented evidence that a car port in a residence near the building fell down. Plaintiff's engineers testified that the building collapsed due to tornado action as some of the walls of the building were blown outwardly which is

"3. Windstorm and hail excluding loss caused * * * indirectly by frost . . .
"This company shall not be liable for loss * * * caused by: (a) by rain, snow, * * * whether driven by wind or not, unless the building covered or containing the property covered shall first sustain an actual damage to roofs or walls by the direct action of wind or hail . . . "

2. Plaintiff's evidence established a loss of $65,331.88.

the type of damage from a tornado due to its low pressure.

Defendant's evidence was to the effect that local weather reports did not disclose the presence of a tornado at the time involved but did report a thunderstorm; that they showed 4.05 inches of rain on September 6, 1971 with 2.22 inches thereof falling between 1:00 and 2:00 a. m. of that day. The weather reports also showed the highest wind on September 6, 1971 to be 46 miles per hour from the northeast but the time is not reported. The wind was 20 miles per hour at 3:00 a. m. Plaintiff's experts testified that a tornado passed over the building from the southeast to the northwest.

Defendant's expert testified that laboratory core tests of the concrete in the area of the failure in the center of the eighty foot beam reveal compressive strength of around 1800 pounds per square inch, whereas, they should have tested to at least 4000 pounds per square inch; that five beams fell but only one eighty foot beam showed concrete failure; that none of the columns showed any defects; that the walls of the building were of light construction being made of concrete blocks erected between the columns and only tied to the structure by mortar between the blocks and columns with stone veneer added to the outside and that the wall panels except for some openings were approximately twenty feet high and forty feet wide; that about one half of the roof of the building collapsed and fell to the floor; that such action would compress the air in the closed building and blow the walls outward; that the tearing of the roof by the collapse would come late in the falling action and not significantly lessen the effect of compressed air from the falling of the roof on the walls of the building; that there was evidence of considerable roof gravel inside the building which had been washed to the south end of the building after the collapse which is evidence of presence of consid-

erable water on the flat roof at the time of the collapse which washed the gravel in that direction with the collapse of the roof. This witness, who qualified as an expert in tornadoes, testified that had the building been hit by a tornado, as claimed by Plaintiff, the same would have sucked the felt paper roof and insulation and perhaps more roof structure into the tornado funnel and carried it some distance away, whereas, after the collapse none of the roof was missing—it had only partially collapsed into the building. This witness also testified that if the building has been hit by high velocity winds from the southeast to the northwest instead of a tornado the south and east walls of the building would not have collapsed in an outward direction but would have collapsed inward. This witness found no damage to the other building in the shopping center and the evidence reveals no other structure damage of any consequence in the surrounding neighborhood except the one car port roof which partially collapsed. There was also no evidence that any of the debris of the building was carried any distance from the building.

From all the evidence presented, the Court is of the opinion and judgment and so finds and concludes that the collapse of the building involved and Plaintiffs loss was due to a defective eighty foot pre-stressed concrete beam in the building which with the presence of heavy rainfall on the flat roof failed and by chain reaction brought about the collapse of about one half of the roof and the resulting outward wall damage. The Court does not believe from the evidence that the building was hit by a tornado nor does the Court believe that the roof and wall collapse was caused by a wind of high velocity.

■ When windstorm and structural defect (or any other non-covered factor) join or concur to bring about damage to a building, the rule of law usually applied is that the efficient and dominate

cause between the two is liable for the resulting loss. 93 A.L.R.2d 145, Annotation: Cause of loss under windstorm insurance coverage. 44 Am.Jur.2d, Insurance § 1793; *Lynch v. Travelers Indemnity Company*, 452 F.2d 1065 (Eighth Cir. 1972); *Kemp v. American Universal Insurance Company*, 391 F.2d 533 (Fifth Cir. 1968); *National Hills Shop. Cent., Inc. v. Insurance Co. of No. Am.*, 308 F.Supp. 248 (S.D.Ga.1970); *Beattie Bonded Wrhse. Co. v. General Acc. F. & L. A. Corp., Ltd.*, 315 F.Supp. 996 (D.S. C.1970); *American National Bank v. Aetna Ins. Co.*, 447 F.2d 680 (7th Cir. 1971).

The Court need not apply this rule of law herein for the Court is of the opinion that the building collapse and Plaintiff's loss was caused solely by the structural defect herein mentioned and rain, both being non-covered causes under Plaintiff's policy. The Court does not feel that the building was damaged by either a tornado or a windstorm. But in any event as there is some evidence of rather high winds in Tulsa and in the area of the building on September 6, 1971 during or about the time involved and as circumstantial evidence must be relied upon herein to some extent the Court concludes that between the structural defect and wind the efficient and dominant cause of the building collapse and the Plaintiff's loss was a structural defect and not a windstorm.

By reason of the foregoing, judgment should be entered herein in favor of the Defendant by which Plaintiff's action against it is dismissed and Defendant's Third Party Complaint against the Third Party Defendants should also be dismissed as being moot in view of Defendant not being found liable herein to Plaintiff.